# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-00719-SCT

*SECRETARY OF STATE OF THE STATE OF*
*MISSISSIPPI AND CITY OF OCEAN SPRINGS,*
*MISSISSIPPI*

*v.*

*CLYDE H. GUNN, III, D. NEIL HARRIS, SR. AND*
*VECIE MICHELLE HARRIS*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/23/2010 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | RICKEY T. MOORE |
| | ADAM STONE |
| | KAYTIE MICHELLE PICKETT |
| | JOHN B. EDWARDS, II |
| ATTORNEYS FOR APPELLEES: | JOHN G. CORLEW |
| | VIRGINIA T. MUNFORD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 10/13/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     The Secretary of State of Mississippi ("State") and the City of Ocean Springs ("Ocean

Springs") bring this appeal. The Hinds County Chancery Court enjoined the construction of

a sidewalk along the beach, adjacent to the seawall, on property claimed by Gunn and Harris

in Ocean Springs. This Court must determine whether the chancellor erred in granting the

permanent injunction. The State and Ocean Springs assert that the chancellor erred in issuing

the permanent injunction because: her finding of irreparable injury was not supported by substantial evidence; an adequate remedy at law was available; and she failed to rule on the merits of the underlying dispute regarding ownership of the land where the proposed sidewalk was to be located.

¶2.     We find no error in the chancellor's earlier determination that irreparable injury would result if she did not grant an injunction and that no adequate remedy at law was available. We conclude that the chancellor's Order and Opinion is in fact a preliminary injunction, incorrectly *styled* as a permanent injunction. It is clear from its language that the chancellor sought to protect the interests of all parties *until ownership of the property could be determined*.[1] We therefore remand this case to the Hinds County Chancery Court, vacate the permanent injunction, and leave the earlier-issued preliminary injunction in place.[2]

## FACTS AND PROCEDURAL HISTORY

¶3.     Clyde H. Gunn and D. Neil Harris, Sr., each own property in an area of Ocean Springs known as East Beach. A roadway, a seawall, and the beach run adjacent to the Gulf of Mexico ("Gulf"), separating home sites from the beach and Gulf.[3] The beach runs from the edge of the seawall to the shoreline, or water's edge. Tidelands – lands that are subject to the

---

[1]An ownership dispute is the subject of separate litigation in Jackson County.

[2]The preliminary injunction was not appealed.

[3]The location of Gunn's and Harris's properties is more accurately described as being on the Mississippi Sound. *See* National Oceanic and Atmospheric Administration – Gulf nautical charts, http://www.charts.noaa.gov/OnLineViewer/GulfCoastViewerTable.shtml (last visited September 16, 2011).

2

ebb and flow of the tides – span the area from the beach south into the Gulf.[4] The State holds

such tidelands in public trust.[5] The mean high-water line marks the boundary between

public-trust tidelands and private property.[6]

---

[4]Tidelands are "those lands which are daily covered and uncovered by water by the action of the tides, up to the mean line of the ordinary high tides." Miss. Code Ann. § 29-15-1(h) (Rev. 2010).

[5]Miss. Code Ann. § 29-15-5 (Rev. 2010) ("Tidelands and submerged lands are held by the state in trust for use of all the people . . . . Littoral and riparian property owners have common law and statutory rights under the Coastal Wetlands Protection Law which extend into the waters and beyond the low tide line, and the state's responsibilities as trustee extends to such owners as well as to the other members of the public.").

[6]See Miss. Code Ann. § 29-15-3(2) (Rev. 2010) (declaring the Legislature's aim "to resolve the uncertainty and disputes which have arisen as to the location of the boundary between the state's public trust tidelands and the upland property and to confirm the mean high water boundary line . . . ."). The mean high-water line is "the intersection of the tidal datum plane of mean high water with the shore." Miss. Code Ann. § 29-15-1(d) (Rev. 2010). Mean high water is "the arithmetic mean of all the high waters occurring in a particular nineteen-year tidal epoch period; or for a shorter period of time after corrections are applied to the short term observations to reduce these values to the equivalent nineteen-year value." Id. at (c).

A mapping procedure determines the boundary between the state's public-trust tidelands and the upland property. Miss. Code Ann. § 29-15-7 (Rev. 2010). The Secretary of State submits a map to the chancery clerks of affected counties depicting "the boundary as the current mean high water line where shoreline is undeveloped and in developed areas or where there have been encroachments, such maps shall depict the boundary as the determinable mean high water line nearest the effective date of the Coastal Wetlands Protection Act."Id. After a sixty-day notice-and-comment period, the Secretary of State certifies adoption of the final map and records it with the appropriate chancery clerks. Id. Within 120 days of certifying the final map, the Secretary of State must identify and notify all property owners whose lands are subject to the public trust and are in violation of the public trust. Id. "[A]fter three (3) years the boundary as set forth in the certified map shall become final unless the occupant has submitted a contrary claim to the office of the Secretary of State." Id. Land owners "have six (6) months to negotiate and settle differences with the Secretary of State." Id. "A boundary determination shall be final upon agreement of the Secretary of State and the owner and an instrument setting forth the boundary agreement shall be duly executed and recorded in the chancery court where the property is located. Any such boundary agreement shall be binding on the state and other parties thereto." Id.

¶4.     In 2009, Ocean Springs received a federal grant to fund a beach-side public sidewalk project. On November 9, 2009, Ocean Springs applied for a permit from the Mississippi Department of Marine Resources ("Marine Resources") to build the sidewalk.

¶5.     On November 16, 2009, the State and Ocean Springs entered into a lease of public-trust tidelands, a narrow strip of beach known as East Beach, which the lease describes as located "seaward of the toe of the seawall." The lease permits Ocean Springs to use the beach "for a free public walkway, access area, bicycle racks and other amenities which serve a higher public purpose of promoting the public access to and public use of tidelands and submerged lands."

¶6.     On January 11, 2010, Gunn and Harris filed a complaint against the State and Ocean Springs, challenging the validity of the lease. Gunn and Harris alleged that the State had acted contrary to its own statutory law, public policy, and the administrative rules and procedures, because the State had failed to obtain Gunn's and Harris's permission as property owners, or, at a minimum, as holders of littoral or riparian rights.[7] Gunn and Harris requested that the chancellor enter a judgment declaring the lease void and enjoining the Secretary and Ocean Springs from any further action or proceeding under the lease.

¶7.     On February 9, 2010, Marine Resources granted the permit for construction of the sidewalk, and construction was scheduled to begin in March 2010.

---

[7]"Riparian" rights relate to land on "the bank of a river or stream . . . ." ***Stewart v. Hoover***, 815 So. 2d 1157, 1163 (Miss. 2002). "Littoral rights" are those "[r]ights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian). Littoral rights are usually concerned with the use and enjoyment of the shore." ***Id***. (citation omitted). Gunn and Harris assert rights associated with property adjacent to the Gulf of Mexico; therefore, they claim littoral, not riparian, rights.

¶8.     On March 24, 2010, the chancellor held a hearing on Gunn's and Harris's request for a preliminary injunction. The chancellor granted the preliminary injunction. The chancellor found that (1) the substantial likelihood of prevailing on the merits weighed equally in each party's favor; (2) Gunn and Harris would likely suffer irreparable injury because the project was scheduled to be completed "within a matter of weeks[,]" before litigation of the merits; (3) the Secretary of State or Ocean Springs would likely not suffer irreparable injury; and (4) maintaining the area in its natural state would serve the public interest.

¶9.     On April 8, 2010, the chancellor signed a "Judgment for Preliminary Injunction and Setting Security" granting the preliminary injunction "*pending a hearing of this matter on the merits,*" requiring Gunn and Harris "to forthwith post a security bond in the amount of $250,000[,]"and scheduling a hearing on the merits for a permanent injunction and declaratory relief for April 13 and 14, 2010. (Emphasis added.) Gunn and Harris posted the $250,000 bond the next day. The bond states that "should the Court find that its preliminary injunction was wrongfully granted, then this obligation be void; *otherwise to remain in full force and effect.*" (Emphasis added.) We find no evidence in the record that the Hinds County Chancery Court has held that the preliminary injunction was wrongfully granted, or that Gunn's and Harris's injunction bond has been cancelled.

¶10.    On April 13 and 14, 2010, the chancellor held a hearing. On numerous occasions during the hearing, the chancellor expressed that the issue of property rights was not properly before the court and that a case to determine ownership was pending in Jackson County.

¶11.    On April 23, 2010, the chancellor issued an Order and Opinion denying Gunn and Harris declaratory relief, but granting a permanent injunction. The chancellor again

5

acknowledged the dispute over ownership of the leased land, but "refrain[ed] from drawing property lines or declaring fee simple ownership and other property ownership rights . . . ." The chancellor balanced the required factors for granting an injunction, finding that: (1) "[u]ntil a judgment of ownership rights is resolved then . . . this Court[ ] . . . must balance the Plaintiffs' rights to free and quiet enjoyment of the real property now in their possession and the City of Ocean Springs['] contention that the Subject Lease is valid. At present, [the substantial likelihood of prevailing on the merits] factor weighs equally to both parties[;]" (2) Gunn's and Harris's property interests "will be irreparably injured if the injunction is not granted" and "if the subject lease were allowed to continue[,] . . . the proposed pathway would be in place and construction complete before any other litigation could be resolved[;]" (3) she was "not persuaded that the Defendants will suffer harm [if the injunction is issued;]" and (4) "it is in the public's interest to refrain from altering the natural habitat of the Subject Lease area until such time as the ownership of the Subject Lease area and relevant surrounding areas is established." The chancellor concluded that, on balance, equity dictated that an injunction should be granted enjoining construction of the pathway "[u]ntil there has been a final determination of property ownership."

## ISSUES

¶12.    This Court will consider:

> (1) Whether the trial court erred in granting a permanent injunction, because substantial evidence does not support a finding of irreparable injury;
> (2) Whether the trial court committed legal error by granting a permanent injunction, because an adequate remedy at law is available; and

6

(3) Whether the trial court erroneously awarded a permanent injunction without ruling on the merits of the underlying action.[8]

## LAW AND ANALYSIS

¶13.    This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."*A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 567 (Miss. 2010) (citations omitted).

¶14.    In determining the propriety of issuing an injunction, a chancellor must balance four factors: "(1) there exists a substantial likelihood that plaintiff will prevail on the merits; (2) the injunction is necessary to prevent irreparable harm; (3) the threatened harm to the applicant outweighs the harm the injunction might do to the respondents; and (4) entry of the injunction is consistent with the public interest." *Am. Legion Post # 134 v. Miss. Gaming Comm'n*, 798 So. 2d 445, 454 (Miss. 2001).

---

[8]The Secretary of State raises a fourth issue: "Whether the trial court erred by excluding testimony and documents submitted by Willa Brantley." The Willa Brantley evidence was related to the Mississippi Commission on Marine Resources' decision to issue a permit for the pathway project, and presumably would support the argument that destruction of habitat is not sufficient to constitute "irreparable harm" under the chancellor's injunction analysis. We decline to address this issue in depth, because we find that, with or without the Willa Brantley evidence, the chancellor did not err in finding that Gunn and Harris would be irreparably harmed if an injunction did not issue. The chancellor found that Gunn and Harris would be harmed both by habitat destruction and by harm to their real property (should they be determined to own the property) if construction were to continue before their ownership rights were determined. Because the latter ground – harm to Gunn's and Harris's real-property interests – provides sufficient justification for granting an injunction, the Willa Brantley evidence does not affect our consideration of the chancellor's decision to grant the injunction.

7

**(1) Whether the trial court erred in granting a permanent injunction, because substantial evidence does not support a finding of irreparable injury.**

¶15.    We cannot conclude that the chancellor erred in finding that Gunn and Harris would suffer irreparable injury if she did not issue an injunction. The chancellor found that habitat destruction and damage to real property would cause irreparable harm to Gunn and Harris, if ownership is resolved in their favor. However, the chancellor's finding is couched in language that shows an intent to grant a temporary, not a permanent, injunction: "if the subject lease were allowed to continue[,] then the reality of it is that the proposed pathway would be in place and construction complete *before any other litigation could be resolved*." The chancellor expressed concern that the resolution of Gunn's and Harris's property rights could be rendered meaningless if she failed to issue an injunction to prevent construction of the pathway until their property rights were determined. Allowing construction of the pathway to proceed before ownership rights are determined could result in irreversible harm to Gunn and Harris, should it be determined that they own the land upon which the pathway is built. We find no evidence that the chancellor "abused [her] discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard" in finding that Gunn and Harris would be irreparably injured, particularly in light of the chancellor's ruling to prevent construction before ownership of the property is determined. Thus, although we find no error in granting an injunction, the State's contention that it was error to grant a *permanent* injunction has merit. "Permanent" means "[l]asting or meant to last indefinitely" or "[n]ot expected to change in status, condition, or place[.]" *Webster's II New College Dictionary* 819

8

(2001). In contrast, "temporary" means "[l]asting, used, or enjoyed for a limited time[.]" *Id.* at 1135-36. Therefore, it was error to grant a permanent injunction.

**(2) Whether the trial court committed legal error by granting a permanent injunction, because an adequate remedy at law is available.**

¶16.    Determining whether an adequate remedy at law is available is a part of determining whether "irreparable harm" will occur if an injunction does not issue. If an adequate remedy at law were available, Gunn and Harris would not be harmed irreparably in the absence of an injunction, because the very purpose of a remedy at law is to compensate for the harm the construction would cause. In other words, if an adequate remedy at law existed, the harm would be "reparable" rather than "irreparable." The chancellor's finding that Gunn and Harris would be harmed irreparably, therefore, contained a finding that there was no adequate remedy at law. As discussed above, we cannot find that the chancellor "abused [her] discretion, was manifestly wrong, clearly erroneous[,] or applied an erroneous legal standard" in finding that no adequate remedy at law was available, although it was error to grant a permanent injunction for the same reasons applied in ¶15 (*supra*).

**(3) Whether the trial court erroneously awarded a permanent injunction without ruling on the merits of the underlying action.**

¶17.    The absence of a decision on the merits precludes a chancellor from granting a permanent injunction, but would not and did not preclude the continuance of the equitable relief granted via a preliminary injunction, until ownership of the property is determined. The chancellor erred in styling the disposition as a permanent injunction, because a court may issue a permanent injunction only after a "full hearing on the merits of the claim[.]" ***A-1 Pallet Co. v. City of Jackson***, 40 So. 3d 563, 569 (Miss. 2010). However, a "court may issue

9

a preliminary injunction even though plaintiff's right to relief still is uncertain." Miss. R. Civ. P. 65(a) cmt. "[A] preliminary injunction . . . is an injunction issued to protect the plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision on the merits." *Id*. Here, the chancellor enjoined construction of the pathway "[*u*]*ntil there has been a final determination of property ownership*." (Emphasis added.) Therefore, we find that the chancellor's Order and Opinion in fact granted a preliminary injunction, albeit incorrectly *styled* as a permanent injunction.

¶18. The language of the chancellor's Order and Opinion validates a decision to grant injunctive relief. The chancellor concluded her Order and Opinion by stating:

> *Until* there has been a final determination of property ownership, this Court finds that the proposed pathway construction shall not be built without first knowing to whom the property belongs and to whom certain rights, privileges, and duties are given in relation to that property.
> Therefore, the Plaintiffs should prevail on the permanent injunction *until* there is absolute certainty of the ownership rights of the parties.

The chancellor's repeated use of the word "until" evidences a clear intention that an injunction be in place *until* a decision on the merits is reached – exemplifying the concept of a preliminary injunction. Thus, the injunction granted was conditional, and not a final, permanent resolution of the case. As such, only a preliminary injunction would lie.

¶19. The chancellor analyzed the necessary factors for granting an injunction. A court is required only to "*balance* the . . . factors[,]" not to resolve all four factors in one party's favor or the other, to achieve equity and grant an injunction. *See A-1 Pallet Co.*, 40 So. 3d at 569. The chancellor first found that Gunn's and Harris's property interests "will be irreparably injured if the injunction is not granted" and "if the subject lease were allowed to continue[,]

10

*. . . the proposed pathway would be in place and construction complete before any other litigation could be resolved.* This factor weighs in the Plaintiffs' favor." (Emphasis added.) Next, the chancellor stated that she was "not persuaded that the Defendants will suffer harm [if the injunction is issued]" and concluded that "[t]his factor does not weigh in the Defendants' favor." The chancellor then found that "it is in the public's interest to refrain from altering the natural habitat of the Subject Lease area *until such time as the ownership of the Subject Lease area and relevant surrounding areas is established.* This factor weighs in the Plaintiffs' favor." (Emphasis added.) Finally, the chancellor addressed whether the plaintiff is likely to prevail on the merits and found that "[a]t present, this factor weighs equally to both parties." The chancellor concluded, on balance after considering the factors, that equity dictated that an injunction should be granted enjoining construction of the pathway "[*u*]*ntil there has been a final determination of property ownership.*" (Emphasis added.) Given the uncertainty of the ownership of the property, we cannot conclude that the chancellor abused her discretion in granting an injunction, although she erred in styling it as a permanent injunction. *See supra*, ¶¶ 15-16.

**CONCLUSION**

¶20.    We find that the injunction issued is essentially a reaffirmation of the earlier-granted preliminary injunction, improperly *styled* as a permanent injunction. We reverse the judgment granting a permanent injunction. We remand this case to the Hinds County Chancery Court with instruction to continue the preliminary injunction originally granted, which has not been appealed or cancelled. The chancellor may, within her discretion, (1) stay the action "until there is absolute certainty of the ownership rights of the parties" or (2)

11

transfer the action to the Jackson County Chancery Court, if she concludes that "in the interest of justice[,]" transfer is in the best interests of all parties and will result in a more efficient resolution. *See* Miss. R. Civ. P. 82(e) (providing that "in the interest of justice[,]" a court may transfer a case that was filed in an appropriate venue to another court within the state "in which the action might have been properly filed").[9] In so doing, all rights of all parties will be protected, as justice and equity require.

¶21.   **REVERSED AND REMANDED.**

   **WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR.   KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.  PIERCE, J., NOT PARTICIPATING.**

   **KING, JUSTICE, DISSENTING:**

¶22.   With appropriate respect for the Majority, I am compelled to dissent from its ultimate resolution of this case. The Majority claims that the chancellor did not issue a permanent injunction, but in language less than artful, merely continued the preliminary injunction by improperly styling it as a permanent injunction.  On that basis, the Majority holds that this case should be remanded with instructions to continue the preliminary injunction.  It is my belief that the  proper reading of the record is that (1) the chancellor held a hearing and granted a preliminary injunction; (2) the chancellor held a subsequent hearing on the merits

---

[9]We advise that Mississippi Rule of Civil Procedure 60(c) provides that, if the chancellor transfers this case to another court, the transfer will become effective ten days after she enters the order. For the transfer order to be reconsidered, the party seeking reconsideration must file a motion seeking reconsideration prior to the expiration of the ten-day period, with no exceptions. Miss. R. Civ. P. 60(c).

of Gunn's and Harris's request for a permanent injunction; (3) the chancellor inferentially found that Gunn and Harris had failed to present sufficient evidence to establish their entitlement to a permanent injunction; and (4) the chancellor erred in granting a permanent injunction. Under this reading, the only proper action for this Court is to dissolve the permanent injunction.

¶23.    Gunn and Harris requested that the chancellor preliminarily and permanently enjoin the Secretary of State and Ocean Springs from taking any  action under what was claimed by the Secretary of State and the City of Ocean Springs to be a lease of public tidelands. Following a hearing, the chancellor granted the preliminary injunction on April 8, 2010, and scheduled a hearing on the request  for a permanent injunction for April 13 and 14, 2010.

¶24.    As the movants, Gunn and Harris were responsible for placing before the chancellor sufficient evidence of their entitlement to a permanent injunction. This Court has held that facts to warrant an injunction must be established by a preponderance of the evidence. ***State v. Myers***, 244 Miss. 778, 782, 146 So. 2d 334, 335 (1962) (citations omitted).   Thus, Gunn and Harris were required to prove that the facts more likely than not supported their claim that the lease is invalid.  ***Dill v. Southern Farm Bureau Life Ins. Co.***, 797 So. 2d 858, 867 (¶27) (Miss. 2001).

¶25.    Following the presentation of evidence by the parties, the chancellor analyzed the evidence presented to her, and addressed the four-factor test which is applied  to determine whether to grant a permanent injunction.  Those four factors which are to be used in determining whether to issue a  permanent injunction are:  (1) a substantial likelihood that the plaintiff will prevail on the merits; (2) irreparable injury to the plaintiff; (3) the harm an

injunction would cause the defendant; and (4) public interest. ***Punzo v. Jackson County***, 861 So. 2d 340, 350 (¶41) (Miss. 2003) (citing ***Electronic Data Sys. Corp. v. Miss. Div. of Medicaid***, 853 So. 2d 1192, 1207-08 (¶49) (Miss. 2003).

¶26.	The primary issue to be resolved in a consideration of the merits of the claims of Gunn and Harris is the ownership of the disputed property. In addressing that issue, the chancellor stated: "Evidence in this matter asserts that the Proposed Project may or may not be located within tideland. Further evidence contends that the Plaintiffs may or may not have littoral rights within the Proposed Project area . . . . At present, this factor weighs in equally to both parties." Clearly, the chancellor considered this issue and determined that she lacked sufficient evidence to resolve it in favor of Gunn and Harris. The chancellor specifically held that the evidence of ownership did not preponderate in favor or either party. Because Gunn and Harris failed to meet their requisite burden of proof, they failed to establish any entitlement to relief. Thus, the chancellor erred in granting a permanent injunction.

¶27.	The Majority holds that the injunction is mistakenly styled as permanent and is essentially a reaffirmation of the earlier-granted preliminary injunction. The Majority holds that this appeal should be remanded with an instruction to continue the preliminary injunction. I disagree. A preliminary injunction remains in place only until the completion of a trial on the merits. *See* Mississippi Rule of Civil Procedure Rule 65; 11 Wright & Miller, *Federal Practice and Procedure*, Civil § 2947 (1973). The chancellor conducted a hearing on the merits and found that Gunn and Harris had failed to present sufficient evidence to establish their entitlement to a permanent injunction. I do not doubt that this Court may, by a mere majority vote, make any disposition of this case that it chooses.

However, I am aware of no legal basis that allows this Court to ignore that the chancellor held a hearing on the merits and determined that Gunn and Harris had failed to establish that they were entitled to permanent injunctive relief. I would therefore hold that the chancellor erred in granting a permanent injunction, and the permanent injunction should be dissolved.