# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00744-COA

| | |
|---|---|
| **BILL LAUDERDALE D/B/A BUMPS & RUTS MOTORCROSS TRACK** | **APPELLANT/CROSS-APPELLEE** |

**v.**

| | |
|---|---|
| **DESOTO COUNTY, MISSISSIPPI, BY AND THROUGH ITS BOARD OF SUPERVISORS** | **APPELLEE/CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2014 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM P. MYERS |
| ATTORNEYS FOR APPELLEE: | JOSEPH DAVID NEYMAN JR. |
| | ROBERT E. QUIMBY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S CLAIM FOR DAMAGES RELATED TO THE GRANT OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION, AND GRANTED APPELLANT'S CLAIM FOR ATTORNEY'S FEES AND EXPENSES INCURRED IN DEFENDING AGAINST A PERMANENT INJUNCTION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 07/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     This appeal arises from the DeSoto County Chancery Court's judgment denying Bill Lauderdale's claim against DeSoto County for monetary damages related to a temporary restraining order (TRO) and a preliminary injunction but granting Lauderdale's claim for the

attorney's fees and expenses he incurred in defending against the County's application for a permanent injunction.

¶2. The procedural history reflects that, in response to a public racing event Lauderdale held at his motocross track on the weekend of May 25, 2012, the County filed an application for a TRO, a preliminary injunction, and a permanent injunction against Lauderdale to enjoin specific public events at the track on specific dates in June, August, and September 2012. In considering the County's application, the chancellor granted the County a TRO against Lauderdale on June 8, 2012, to prohibit an additional public race from being held the weekend of June 9, 2012. The next month, on July 2, 2012, the chancellor granted the County a preliminary injunction against Lauderdale. The preliminary injunction closed the track for two specific events scheduled for the weekends of August 10, 2012, and September 7, 2012. The chancellor granted the preliminary injunction after finding that, following the TRO's expiration, Lauderdale hosted yet another public racing event the weekend of June 23, 2012, without giving the County the requisite notice. As the record reflects, both the TRO and the preliminary injunction expired pursuant to their own terms without Lauderdale raising a motion to dissolve or modify either. The preliminary injunction expired on September 9, 2012.

¶3. On July 2, 2012, the County filed its amended application for a permanent injunction against Lauderdale to enjoin newly scheduled public racing events to be held after the expiration of the preliminary injunction. The newly scheduled events were set for September

2

30, 2012, and December 9, 2012. On August 13, 2012, the chancellor entered an order of continuance on the County's amended application for a permanent injunction. The chancellor acknowledged in her order that Lauderdale had retained counsel. The record shows that, upon expiration of the preliminary injunction, the chancellor ordered no further injunction. On April 3, 2013, Lauderdale filed his answer to the County's amended application for a permanent injunction. The record reflects that Lauderdale filed his answer well after the occurrence of the September 30, 2012 and December 9, 2012 racing events cited in the County's amended application. On April 18, 2013, after a hearing on the County's amended application, the chancellor entered an order denying the County's request for a permanent injunction.

¶4. Lauderdale subsequently filed a motion on April 22, 2013, seeking to recover damages and attorney's fees related to the County's actions for the TRO and the preliminary injunction and its amended application for the permanent injunction. On April 8, 2014, the chancellor entered an order denying Lauderdale's request for damages but awarding the attorney's fees that Lauderdale incurred in defending against the County's amended application for a permanent injunction. The record shows that the chancellor awarded Lauderdale attorney's fees even though she denied the County's amended application for a permanent injunction and even though she also found that Lauderdale was never wrongfully enjoined by the TRO or the preliminary injunction.

¶5. In appealing the chancellor's judgment, Lauderdale challenges the denial of his

request for monetary damages related to the grant of the June 2012 TRO and the July 2012 preliminary injunction. Specifically, Lauderdale raises the following issues: (1) whether the chancellor abused her discretion by granting the County's application for a TRO on June 8, 2012, and a preliminary injunction on July 2, 2012; and (2) whether Lauderdale presented sufficient evidence to prove he suffered monetary damages due to the allegedly improper TRO and preliminary injunction. On cross-appeal, the County alternatively argues that the chancellor abused her discretion by awarding Lauderdale the attorney's fees and expenses he incurred in defending against the County's amended application for a permanent injunction.

¶6.     As set forth herein, we find substantial evidence in the record to support the chancellor's grant of both the TRO and the preliminary injunction.[1] We therefore find no abuse of discretion resulting from the chancellor's grant of either the TRO or the preliminary injunction. We further find that the chancellor abused her discretion by erroneously awarding Lauderdale the attorney's fees and expenses he incurred in defending against the County's unsuccessful amended application for a permanent injunction since neither Lauderdale nor the track was ever wrongfully enjoined.[2] As a result, we affirm in part and reverse and render in part the chancellor's judgment.

[1] *See Sec'y of State v. Gunn*, 75 So. 3d 1015, 1020 (¶13) (Miss. 2011) (stating that the appellate court will not disturb the chancellor's factual findings when supported by substantial evidence unless the chancellor abused her discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard).

[2] *See* Miss. Code Ann. § 11-13-37 (Rev. 2004); M.R.C.P. 65(c).

4

¶7.    We now turn to a more detailed recitation of the facts in this case.

**FACTS**

¶8.    The dispute and related injunctions in this case stem from a conditional-use permit the County granted to a motocross track and from Lauderdale's alleged failure to comply with the terms of the conditional-use permit. In 2011, Randy Smith applied to the DeSoto County Board of Adjustment for a conditional use to operate a private motocross track on agriculturally zoned land. On June 13, 2011, the Board of Adjustment met to discuss and vote on Smith's conditional-use application. The minutes from the Board of Adjustment's meeting reflect that Smith informed the Board of Adjustment that about fifteen families were involved in the creation of the track and that the families hoped to provide a safe place for their children to ride motocross bikes. The report further noted Smith's statements that the families would "like to have the ability to allow other individuals on a limited basis to use the facility" but that the venture was "not meant to be a money[-]making project."

¶9.    According to the minutes report, when asked whether races would be held at the track, Smith informed the Board of Adjustment that there would be no "sanctioned races, but [we] may hold small races among members to help provide safety gear as needed." As also reflected in the meeting minutes, Smith assured the Board of Adjustment that "[we] do not wish to open [the track] completely for public use, but [we] would like the flexibility to be able to allow some kids to use the track who would not have anywhere else to ride." In addition, Smith reiterated that "the track will not be opened for the general public to use, it

5

will be used only by members of the private club[,] and . . . no more than 20 motorcycles will be on the track at any time."[3]

¶10.   Subject to several requirements, the Board of Adjustment approved Smith's conditional-use application.   The requirements stated that the Board of Adjustment's approval was for a three-year term to expire on June 13, 2014.  The requirements also set the track's hours of operation from 9 a.m. to 6 p.m. on Monday through Saturday and from 11 a.m. to 5 p.m. on Sunday.  In addition, the requirements stated that "[p]lans for any further organized events shall be presented to the Planning Commission Officer and Sheriff's Department [thirty] days prior to the event date[.]"

¶11.   Following the grant of the conditional-use permit, the track was asked to host two sanctioned public racing events in 2012, with the events to occur on four separate weekends. Because the events usually lasted longer than the operating hours established by the conditional-use permit, Lauderdale filed a second application with the Board of Adjustment on February 28, 2012, to expand the terms of the conditional-use permit.  On the new application, Lauderdale asked the Board of Adjustment to permit "extended hours and special events."  The Board of Adjustment, however, denied Lauderdale's request to expand the conditional-use permit.

---

[3] The minutes report reflects that neighbors of the track were also allowed to share their concerns about the track.  One neighbor expressed concern about the track's hours on Sundays and about whether he and other nearby residents would be able to enjoy some quiet time in their yards in the evenings.

¶12. At its April 9, 2012 meeting, the Board of Adjustment discussed Lauderdale's request to expand the conditional-use application previously granted to the track on June 13, 2011. The report detailing the April 9, 2012 meeting minutes stated the following:

> With this application, [Lauderdale] is requesting to be allowed to host two series race events at the approved . . . track site[,] which would take place on four (4) dates in 2012. . . . Each of [the] four dates falls on a Sunday and would require expanded hours of operation, from [8 a.m.] until [8 p.m.], on the specified race event dates. The applicant is also asking to expand hours of operation until 8 p.m. during the summer months to facilitate use of the track[.]

¶13. The meeting minutes further reflected that, in support of his request to expand the conditional-use permit, Lauderdale told the Board of Adjustment he expected about 100 racers and about 200 to 300 spectators to attend the events. One member of the Board of Adjustment recalled that, when Smith sought the original conditional-use application for the track, Smith stated there would never be public races at the site. In reply, Lauderdale explained that he never expected to receive an invitation to join the two racing events when the track first began.

¶14. The Board of Adjustment also heard from members of the community who objected to the expansion of the conditional-use permit. Several of the neighbors expressed displeasure over the amount of noise associated with the track. One neighbor also objected to the track holding sanctioned race events since he was told that only a few families intended to use the track. In addition, one neighbor raised concerns over environmental issues related to the track, such as fuel spills, wind erosion, and soil erosion. Yet another neighbor complained that the track created traffic-safety issues.

¶15. After discussing the matter, the Board of Adjustment voted to deny Lauderdale's application to expand the conditional-use permit to allow the track to host the race events and to extend its operating hours on the four specified dates and during the summer months. The Board of Adjustment explained its denial by stating that the requested extension "would increase traffic hazards or congestion and would adversely affect the character of the neighborhood."

¶16. Following the Board of Adjustment's denial of his application, Lauderdale timely appealed to the County's Board of Supervisors. On May 7, 2012, the Board of Supervisors heard Lauderdale's appeal. During the Board of Supervisors' meeting, neighbors of the track again shared their concerns and complaints about the track and the proposed expansion of the conditional-use permit. In addition to expressing concern that the track created a safety issue for the community, many of the neighbors complained that the noise from the track prevented them from enjoying their yards. One neighbor also stated that he had understood the track was only supposed to be used by a few families and was not intended as a money-making project.

¶17. The Board of Supervisors also heard from Lauderdale and the supporters of his application to expand the conditional-use permit. Lauderdale explained to the Board of Supervisors that he tried to alleviate some of the concerns raised by the track neighbors by reducing the event hours. In addition, Lauderdale presented his plans for preparing the track to host the race events and to adequately address any issues that might arise. After

8

considering all the testimony and evidence, the Board of Supervisors voted to uphold the Board of Adjustment's denial of Lauderdale's application. Lauderdale asserted no appeal from the Board of Supervisors' ruling.

¶18. Despite the denial of his application to expand the conditional-use permit, Lauderdale still held the first of the race events on the weekend of May 25, 2012. In response to Lauderdale's action of holding the race event the weekend of May 25, 2012, the County filed an application on June 6, 2012, for a TRO, a preliminary injunction, and a permanent injunction to prevent Lauderdale from hosting the second race event scheduled for the weekend of June 9, 2012. In its application, the County argued that the racing event would violate the County's zoning ordinances and create a public nuisance with public health issues.

¶19. On June 8, 2012, the chancellor held a hearing on the County's application for a TRO. The chancellor found the County had shown "a probability of success on the merits regarding factual allegations" that Lauderdale hosted a racing event the weekend of May 25, 2012, despite the Board of Supervisors' denial of "the expansion of [Lauderdale's] conditional use to allow him to have that race event on that date." The chancellor further found that Lauderdale had advertised online that his track was hosting a second racing event the weekend of June 9, 2012, even though the Board of Supervisors specifically denied his request to expand the conditional-use permit to allow that event. The chancellor also determined that the County had "shown a probability of success on the merits" as to its claim

that Lauderdale was creating a public nuisance with public health concerns.

¶20. Based on her findings, the chancellor granted the County's application for a TRO. By its own terms, the TRO expired two days later on June 10, 2012.[4] The chancellor ordered the track to be closed the weekend of June 9, 2012, to prevent Lauderdale from holding the second scheduled public racing event that he was advertising in violation of his conditional-use permit. With regard to the County's application for a permanent injunction, the chancellor continued the matter until July 2, 2012. Despite the chancellor's order, on June 23, 2012, Lauderdale held another public racing event by rescheduling the race originally scheduled for the weekend of June 9, 2012. Lauderdale held the event without giving the County the thirty days' notice required by the conditional-use permit.

¶21. On July 2, 2012, the chancellor again held a hearing on the County's application. In her order issuing a preliminary injunction, the chancellor found that, despite being personally served with notice of the July 2, 2012 hearing, Lauderdale failed to appear. The chancellor also found that Lauderdale had indeed scheduled and hosted a racing event on the weekend of June 23, 2012, without giving the necessary thirty days' notice to the Planning Commission.

¶22. During the July 2, 2012 hearing, the chancellor granted the County a preliminary injunction to prohibit specific upcoming public racing events advertised for the weekends

---

[4] The record reflects that Lauderdale made no motion to dissolve or modify the TRO as allowed by Mississippi Rule of Civil Procedure 65(b).

of August 10, 2012, and September 7, 2012. The chancellor again continued the County's remaining application matters. As the record reflects, and as the chancellor acknowledged in her order granting the preliminary injunction, Lauderdale failed to appear at the July 2, 2012 hearing despite his receipt of sufficient notice. Furthermore, Lauderdale raised no motion to modify or dissolve the preliminary injunction issued against him. In accordance with its own terms, the preliminary injunction expired on September 9, 2012. Even though the chancellor continued the hearing on the application for a permanent injunction, and even though the preliminary injunction expired, the chancellor never ordered any further injunctions.

¶23.     The record shows that, in its amended application filed on July 2, 2012, the County provided newly discovered information about additional public racing events that Lauderdale scheduled for September 30, 2012, and December 9, 2012. The County asserted that, in violation of the Board of Supervisors' decision and the chancellor's preliminary injunction order, Lauderdale moved two of the events enjoined by the preliminary injunction to the new dates in September and December 2012. The County further argued in the amended application that, by rescheduling the events for September 30, 2012, and December 9, 2012, Lauderdale had circumvented the preliminary injunction that expired by its own terms on September 9, 2012. In addition, the County contended that a permanent injunction was necessary because a death had occurred at the race track, because Lauderdale had violated the conditional-use permit and its thirty-day-notice requirement, and because the public race

11

events had created a public nuisance for the community.

¶24. As discussed, after the County amended its application for a permanent injunction, the chancellor continued the matter by order dated August 13, 2012. The record reflects that no further injunction issued after the preliminary injunction expired on September 9, 2012, and no new injunction issued to prohibit the new races cited in the County's amended application, which Lauderdale scheduled for September 30, 2012, and December 9, 2012. On January 4, 2013, the chancellor set the hearing on the County's amended application for April 4, 2013, after the September 30, 2012 and the December 9, 2012 racing events.

¶25. On April 3, 2013, Lauderdale filed his answer to the County's amended application for a permanent injunction. The next day, on April 4, 2013, the chancellor held the hearing on the County's amended application. In denying the County's request for a permanent injunction, the chancellor found that the County presented insufficient evidence to support its amended application. The chancellor concluded that the conditional-use permit only required Lauderdale to provide thirty days' notice to the County of any organized events, and she found that the thirty-day prior-notice requirement provided a sufficient prospective remedy.[5] Although she concluded that Lauderdale previously violated the Board of Supervisors' direct order by hosting the racing events in May and June 2012, the chancellor found that Lauderdale's actions failed to also violate a requirement of the conditional-use

---

[5] The conditional-use permit required Lauderdale to give the sheriff's department and the Planning Commission thirty days' prior notice of any future organized events.

permit so long as he met the thirty-day prior-notice requirement. The chancellor therefore granted Lauderdale's motion to dismiss the County's amended application for a permanent injunction.

¶26. Following the chancellor's ruling, Lauderdale filed a motion to recover damages and fees. Lauderdale argued that the County improperly sought the TRO and the preliminary injunction. In considering Lauderdale's motion, the chancellor found sufficient evidence to support the issuance of both the TRO and the preliminary injunction. The chancellor concluded that Lauderdale presented insufficient evidence to show he suffered monetary damages resulting from the County's request for, and the chancellor's issuance of, the TRO and the preliminary injunction. The chancellor therefore denied Lauderdale's claim for damages related to the issuance of the TRO and the preliminary injunction.

¶27. The chancellor next found, however, that Rule 65 of the Mississippi Rules of Civil Procedure entitled Lauderdale to recover the attorney's fees and expenses he incurred in defending against the County's amended application for a permanent injunction. The chancellor therefore awarded Lauderdale a monetary judgment of $9,661.39. Aggrieved by the chancellor's award of attorney's fees and expenses to Lauderdale, the County filed a motion for reconsideration.

¶28. Following the denial of the County's motion to reconsider, Lauderdale appealed from the portion of the chancellor's judgment denying the damages he claimed resulted from the TRO and the preliminary injunction. The County filed a cross-appeal and argued that the

chancellor abused her discretion by awarding Lauderdale the attorney's fees and expenses he incurred in defending against the County's amended application for a permanent injunction.

## STANDARD OF REVIEW

¶29. This Court will not disturb a chancellor's findings of fact unless the findings were manifestly wrong or clearly erroneous or unless the chancellor applied an erroneous legal standard. *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010). Where the record contains substantial evidence to support the chancellor's findings, we will not reverse her decision. *Id.* However, we review questions of law de novo. *Smith v. Wilson*, 90 So. 3d 51, 56 (¶13) (Miss. 2012).

¶30. We acknowledge that motions for injunctions are within the chancellor's discretion to grant or deny. *See City of Durant v. Humphreys Cty. Mem'l Hosp./Extended Care Facility*, 587 So. 2d 244, 250 (Miss. 1991). When determining whether to grant an injunction, a chancellor must consider the following factors:

> (1) [whether] there exists a substantial likelihood that [the] plaintiff will prevail on the merits; (2) [whether] the injunction is necessary to prevent irreparable harm; (3) [whether] the threatened harm to the applicant outweighs the harm the injunction might do to the respondents; and (4) [whether] entry of the injunction is consistent with the public interest.

*Sec'y of State v. Gunn*, 75 So. 3d 1015, 1020 (¶14) (Miss. 2011) (citation and internal quotation marks omitted). With respect to the applicable burden of proof, we also acknowledge that the factors to warrant an injunction must be established by a preponderance

14

of the evidence. *His Way Inc. v. McMillin*, 909 So. 2d 738, 744 (¶14) (Miss. Ct. App. 2005).

## DISCUSSION

I. **Whether the chancellor abused her discretion by granting the County's application for a TRO and a preliminary injunction.**

II. **Whether Lauderdale presented sufficient evidence to prove he suffered monetary damages due to the allegedly improper TRO and preliminary injunction.**

¶31.    On appeal, we will separately address the sufficiency of the TRO, the preliminary injunction, and the County's amended application for a permanent injunction. We recognize that the TRO, the preliminary injunction, and the amended application for a permanent injunction each address additional facts and different public racing events scheduled to occur on different dates. The County's amended application for a permanent injunction also addresses whether a need existed for a continuing injunction or a permanent injunction.

¶32.    We now turn to a review of the legal sufficiency of the TRO that the chancellor issued on June 8, 2012, and that expired on June 10, 2012. We acknowledge that we review the chancellor's grant of a TRO and a preliminary injunction for abuse of discretion. *See City of Durant*, 587 So. 2d at 250; *Griffith v. Griffith*, 997 So. 2d 218, 224 (¶25) (Miss. Ct. App. 2008).

### A.    The TRO

¶33.    "A [TRO] may be issued where 'immediate and irreparable injury, loss, or damage will result to the applicant' before such time as a hearing on the matter can be held." *See A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 567 (¶13) (Miss. 2010) (quoting M.R.C.P.

15

65(b)(1)). A court may issue a TRO or a preliminary injunction even though a plaintiff's right to relief on the merits remains uncertain. *See Gunn*, 75 So. 3d at 1021 (¶17). As reflected in the chancellor's orders issuing the June 8, 2012 TRO and the July 2, 2012 preliminary injunction, the application for a TRO or a preliminary injunction involves no final determination on the merits. *See id.* Instead, such relief serves to prevent a threatened wrong, any further perpetration of injury, or the doing of an act pending the final determination of the matter. *See id.*

¶34. The record reflects that the chancellor found that, when Lauderdale filed his application to expand the conditional-use permit, he asked the Board of Adjustment to allow him to host several public racing events and to extend the track's hours to accommodate the events. After the Board of Adjustment denied his application, Lauderdale appealed to the Board of Supervisors. However, the Board of Supervisors upheld the Board of Adjustment's denial of Lauderdale's application.[6] Despite this adverse ruling, the record reflects that the chancellor found that Lauderdale still held the first of the prohibited racing events in May 2012 and that he scheduled and advertised a second prohibited racing event at the track for June 2012.

¶35. In her June 8, 2012 order, the chancellor concluded that she must grant a TRO to close the track the weekend of June 9, 2012, to prevent the prohibited race. The chancellor also

---

[6] The record reflects no appeal by Lauderdale for judicial review of the Board of Supervisors' denial of his request to expand the conditional-use permit.

16

determined the TRO was necessary to protect the public interest and to prevent the community surrounding the track from suffering immediate and irreparable injury, loss, or damage due to Lauderdale's actions.[7]  In granting the TRO, the chancellor found the evidence supported the County's allegations that Lauderdale had hosted a racing event the weekend of May 25, 2012, in violation of the Board of Supervisors' order and the conditional-use permit.  The chancellor further determined that the evidence showed Lauderdale also scheduled and advertised a second prohibited race to be held the weekend of June 9, 2012.

¶36.    Finding that Lauderdale had exhibited "willful and deliberate indifference" by ignoring the Board of Supervisors' decision, the chancellor issued the June 8, 2012 TRO and closed the race track to prevent Lauderdale from hosting the public racing event the weekend

---

[7] With respect to evidence of a threat or injury to the community and the public interest, the record reflects that the County presented evidence of the online race advertising and of the proceedings held by the Board of Adjustment and the Board of Supervisors.  The prior proceedings reflected that neighbors of the track attended both hearings to voice their objections to the requested expansion.  Multiple neighbors complained about the noise generated by the track and the disruption to their enjoyment of outdoor activities on their properties.  One neighbor expressed concern about the local fire department's ability to respond to accidents at the track and commented on the traffic issues caused by all the vehicles trying to enter and exit the track.  Another neighbor expressed concern about the environmental issues associated with the track, such as fuel spills, wind erosion, and soil erosion.

The record reflects that, after considering all the testimony, the Board of Adjustment found Lauderdale's requested extension would substantially increase traffic hazards or congestion and would adversely affect the character of the neighborhood around the track.  The Board of Adjustment therefore denied Lauderdale's application.  After holding its own hearing and deliberations, the Board of Supervisors subsequently voted to uphold the denial.

17

of June 9, 2012. As stated, the record reflects that the TRO issued on June 8, 2012, and expired two days later on June 10, 2012, pursuant to its own terms. We also acknowledge that the record reveals that Lauderdale raised no prior challenge to the sufficiency of the evidence supporting the TRO's issuance and that he filed no motion to dissolve or modify the TRO. *See* M.R.C.P. 65(b).

¶37. Upon review, we, like the chancellor, find the record contains substantial credible evidence to support the chancellor's issuance of the TRO. The evidence shows that Lauderdale ignored the Board of Supervisors' denial of his request to expand the conditional-use permit. In addition, the record contains substantial credible evidence to support the chancellor's determination that a TRO was necessary to prevent immediate and irreparable injury to the neighbors of the race track, the surrounding community, and the County until the merits could be determined. As a result, we find no merit to Lauderdale's argument that the chancellor abused her discretion by granting the TRO to prohibit the racing event on the weekend of June 9, 2012.[8]

### B.     The Preliminary Injunction

¶38. We acknowledge that, before issuing a preliminary injunction, a chancellor must balance the following factors: (1) whether a substantial likelihood exists that the plaintiff will prevail on the merits; (2) whether the injunction is necessary to prevent irreparable injury; (3) whether threatened injury to the plaintiff outweighs the harm an injunction might

---

[8] *See Gunn*, 75 So. 3d at 1020 (¶13).

cause to the defendant; and (4) whether the entry of a preliminary injunction is consistent with the public interest. *A-1 Pallet Co.*, 40 So. 3d at 568-69 (¶19).[9] The plaintiff must prove these factors by a preponderance of the evidence. *His Way Inc.*, 909 So. 2d at 744 (¶14). We now turn to a review of the application of the law to the facts of this case.

¶39. In her order granting the preliminary injunction, the chancellor found the County showed a probability of success on the merits as to its allegations that Lauderdale violated the Board of Supervisors' decision and the prior-notice terms of the conditional-use permit and created a public nuisance with public health concerns. Based on her findings, the chancellor concluded that preliminary injunctive relief was required to prohibit the public racing events on the specific weekends of August 10, 2012, and September 7, 2012. The chancellor also determined that the threat of injury to the County outweighed the possible harm to Lauderdale. In issuing the preliminary injunction, the chancellor provided that Lauderdale scheduled and previously hosted a race the weekend of June 23, 2012, without providing the Planning Commission the thirty days' advance notice required by the conditional-use permit.

¶40. Upon the denial of Lauderdale's motion for damages that he filed on April 22, 2013, the chancellor reviewed the evidence supporting the prior issuance of the TRO and the preliminary injunction. In so doing, she concluded that sufficient evidence indeed supported

---

[9] *See also* Jeffrey Jackson, Donald E. Campbell & Justin L. Matheny, *Mississippi Practice Series: Mississippi Civil Procedure* § 19:12 (2015) (discussing the similarities and differences between TROs and preliminary injunctions).

the issuance of the preliminary injunction. In reviewing this assignment of error, we also acknowledge that Lauderdale failed to challenge the sufficiency of the evidence supporting the preliminary injunction's issuance until almost a year and a half after the injunction expired. Moreover, the record reflects that Lauderdale filed no motion to modify or dissolve the preliminary injunction.[10]

¶41.    Although the record shows that Lauderdale received notice of the hearing in which the chancellor granted the preliminary injunction, he failed to appear or to present evidence at the hearing. *See* M.R.C.P. 65(a). Furthermore, the chancellor issued the preliminary injunction on July 2, 2012, to prohibit specific publicly advertised racing events. The preliminary injunction then expired on its own terms on September 9, 2012. The record reflects that the chancellor continued the case by her order dated August 13, 2012, and that she noted in the order that Lauderdale had retained counsel. Lauderdale nonetheless allowed the preliminary injunction to expire according to its own terms on September 9, 2012. The chancellor ordered no further injunction or continuing injunction during the continuance of the matter.

¶42.    As acknowledged, precedent establishes that the facts before the chancellor to support the issuance of a preliminary injunction must be proven by a preponderance of the evidence.

---

[10] *Cf. Invesat Corp. v. Harrison Enters. Inc.*, 386 So. 2d 721, 721 (Miss. 1980) (allowing an interlocutory appeal from the chancellor's order overruling a motion to dissolve a preliminary injunction). *See also* M.R.A.P. 5(a) (discussing interlocutory appeals by permission).

*His Way Inc.*, 909 So. 2d at 744 (¶14).[11] After reviewing the record, we find no abuse of discretion by the chancellor's issuance of the preliminary injunction against Lauderdale.[12] The record contains substantial credible evidence to support the chancellor's factual determinations and to support her issuance of the narrowly tailored preliminary injunction. The record reflects substantial evidence to show that Lauderdale violated the requirements of the conditional-use permit, including the thirty-day prior-notice requirement. Additionally, the record shows that Lauderdale failed to appear at the hearing to challenge the issuance of the preliminary injunction and that he asserted no motion to dissolve or modify the preliminary injunction. Substantial credible evidence also supports the chancellor's finding that the preliminary injunction was necessary to prevent racing events scheduled on various specific dates in violation of the conditional-use permit. Thus, we find that this issue lacks merit.

### C. Lauderdale's Claim for Monetary Damages Related to the TRO and the Preliminary Injunction

¶43. Since the record reflects substantial credible evidence to support the chancellor's issuance of both the TRO and the preliminary injunction, we find no error in the chancellor's denial of Lauderdale's related claim for monetary damages.

¶44. Our precedent acknowledges that "[t]he *wrongful* acquisition of a preliminary

---

[11] Furthermore, we again acknowledge that a preliminary injunction does not involve a final determination of the merits but prevents a threatened injury or damage pending a final determination of the merits. *See Gunn*, 75 So. 3d at 1021 (¶17).

[12] *See Griffith*, 997 So. 2d at 224 (¶25).

21

injunction permits the enjoined party to recover damages and attorneys' fees." *Cox v. Trustmark Nat'l Bank*, 733 So. 2d 353, 355-56 (¶9) (Miss. Ct. App. 1999) (emphasis added). *See also* M.R.C.P. 65(c) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been *wrongfully* enjoined or restrained . . . .") (emphasis added). In addition, Mississippi Code Annotated section 11-13-37 (Rev. 2004) allows a chancellor to determine damages upon hearing a motion to dissolve an injunction.

¶45. In the present case, however, the record fails to show that Lauderdale was ever wrongfully enjoined. The record further reveals that Lauderdale never filed any motion to dissolve or modify the TRO. Instead, Lauderdale allowed the June 8, 2012 TRO to expire two days later pursuant to its own terms.[13] Then, Lauderdale failed to appear or to present evidence at the subsequent hearing in which the chancellor granted the preliminary injunction.[14] Following the chancellor's grant of the preliminary injunction to close the race track on the weekends of August 10, 2012, and September 7, 2012, Lauderdale raised no motion to dissolve or modify the preliminary injunction before its expiration.[15] Instead, like

---

[13] *See* M.R.C.P. 65(b).

[14] *See* M.R.C.P. 65(a).

[15] *Cf. Alfonso v. Gulf Publ'g Co.*, 87 So. 3d 1055, 1059 (¶14) (Miss. 2012) (finding that the motion to compel had already been ruled upon and that no appeal had been taken within thirty days of that ruling). *See also* M.R.A.P. 5(a) (discussing interlocutory appeals by permission).

the TRO, Lauderdale allowed the preliminary injunction to expire pursuant to its own terms on September 9, 2012.

¶46.   As previously stated, the record contains substantial credible evidence to support the chancellor's issuance of both the TRO and the preliminary injunction and to support her finding that neither the TRO nor the preliminary injunction ever wrongfully enjoined Lauderdale.[16]   As a result, we find no merit to Lauderdale's argument that the chancellor erred by denying his claim for monetary damages related to the issuance of the TRO and the preliminary injunction.

> **III.    Whether the chancellor abused her discretion by awarding Lauderdale the attorney's fees and expenses he incurred in defending against the County's amended application for a permanent injunction.**

¶47.   On cross-appeal, the County argues that the chancellor abused her discretion by awarding Lauderdale attorney's fees and expenses related to the County's amended application for a permanent injunction.  We review the chancellor's award of attorney's fees for abuse of discretion.  *See Parker v. Benoist*, 160 So. 3d 198, 212 (¶32) (Miss. 2015).  In reviewing this issue, we acknowledge that attorney's fees may only be awarded where allowed by statute or contract.  *See In re Guardianship of Duckett*, 991 So. 2d 1165, 1179 (¶30) (Miss. 2008).[17]  We also acknowledge that section 11-13-37 and Rule 65(c) establish

---

[16] *See Phillips*, 45 So. 3d at 692 (¶23).

[17] *See also* Miss. Code Ann. § 11-13-37 (allowing a chancellor to determine damages upon hearing a motion to dissolve an injunction).

that attorney's fees may be awarded as part of damages upon a motion for dissolution or when a party suffers wrongful enjoinment.[18]

¶48.    The County asserts that no attorney's fees may be awarded because Lauderdale was never wrongfully enjoined.  The County further contends that the chancellor concluded as much in her judgment on Lauderdale's claim for damages and fees when she determined the record contained sufficient evidence to support the issuance of the TRO and the preliminary injunction.  Citing Rule 65(c), the County argues that, absent a finding of wrongful enjoinment, the chancellor abused her discretion by awarding Lauderdale his attorney's fees and expenses in defending against the County's amended application for a permanent injunction since no permanent injunction ever issued.  Upon review, we agree.

¶49.    After the preliminary injunction expired on September 9, 2012, the record establishes that the chancellor issued no further or continuing injunctions against Lauderdale.[19]  In denying the County's amended application for a permanent injunction in her order entered April 18, 2013, the chancellor found that the permit's thirty-day prior-notice requirement provided a sufficient remedy proscriptively.  We also acknowledge that the two public racing

---

[18] *See Cox*, 733 So. 2d at 355-56 (¶9); George D. Warner Jr., *Warner's Griffith Mississippi Chancery Practice* § 464 (1991).

[19] We acknowledge the record shows that Lauderdale failed to challenge the sufficiency of the evidence supporting the awarded preliminary injunctive relief.  He failed to appear at the hearing in which the chancellor granted the preliminary injunction, and he failed to file any motions to dissolve or modify the TRO or the preliminary injunction.  *See* M.R.C.P. 62(c); M.R.C.P. 65(a).  *See also Howell v. McLeod*, 127 Miss. 1, 1, 89 So. 774, 775 (1921) (acknowledging that, where an injunction is issued and no effort is made to dissolve it until a trial on the merits, attorney's fees to the defendant cannot be allowed).

events cited in the County's amended application were no longer an issue or a threat since they had already occurred on September 30, 2012, and December 9, 2012. Nonetheless, in her order entered April 8, 2014, the chancellor awarded Lauderdale the attorney's fees he incurred in defending against the County's amended application for a permanent injunction even though no permanent injunction was ever issued, modified, or dissolved.

¶50. In considering Lauderdale's claim for damages related to the County's amended application for a permanent injunction, the chancellor stated:

> Lauderdale incurred attorney's fees in defense of the action taken by [the County] to obtain a [p]ermanent [i]njunction . . . to close the track for [Lauderdale's] alleged violations of the terms of his [c]onditional[-][u]se [p]ermit[,] and he is entitled to recover a sum sufficient to reimburse him for attorney's fees and expenses of litigation incurred in defense of that matter pursuant to Rule 65 . . . . The attorney's fees and expenses incurred by . . . Lauderdale in this matter are found to be reasonable and necessary as supported by [a]ffidavits filed in this cause.

¶51. The chancellor abused her discretion by erroneously awarding Lauderdale attorney's fees as damages for defending against the County's amended application since neither Lauderdale nor the track was ever wrongfully enjoined. As stated, section 11-13-37 and Rule 65(c) allow the chancellor to award attorney's fees as damages upon a motion for dissolution or where a party suffers wrongful enjoinment.[20] The record here reflects that no permanent

---

[20] Rule 65(c) states:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney's fees as may be incurred or suffered by any party who is found to have been wrongfully

25

injunction ever issued on the County's amended application for such relief and that substantial credible evidence supported the TRO and the preliminary injunction. As discussed, after the preliminary injunction expired on September 9, 2012, the chancellor issued no further injunctions.

¶52. In *Cox,* this Court recognized that "[t]he [attorney's] fees are those 'incurred or suffered by any party who is found to have been wrongfully enjoined,' which makes the erroneous injunction the key." *Cox*, 733 So. 2d at 356 (¶10) (quoting M.R.C.P. 65(c)). Stated otherwise, the damages to which a defendant is entitled on dissolution of an injunction include attorney's fees for procuring an injunction's dissolution but not for defending on the merits. *Lundy v. Greenville Bank & Trust Co.*, 179 Miss. 282, 282, 174 So. 802, 814 (1937); *Mims v. Swindle*, 124 Miss. 686, 686, 87 So. 151, 151-52 (1921).

---

enjoined or restrained; provided, however, no such security shall be required of the State of Mississippi or of an officer or agency thereof . . . .

The comments to Rule 65 further state that "Rule 65(c) requires that proper security be given by the movant obtaining a TRO or preliminary injunction so that proper payment for costs, damages[,] and reasonable attorneys' fees may be made to the restrained party in the event it is determined that such party was wrongfully enjoined or restrained." M.R.C.P. 65 cmt. *See also Curphy & Mundy v. Terrell*, 89 Miss. 624, 624, 42 So. 235, 235-36 (1906) ("[C]ounsel fees caused by the wrongful issuance of the injunction are properly recoverable both for services in securing the dissolution in the lower court and for services in preventing that decree from being reversed in the [Mississippi] Supreme Court, because all such services, so rendered, are rendered in the effort to dissolve the injunction and keep it dissolved, and the fees in both courts are directly occasioned as damages by the wrongful issuance of the injunction, always provided that the fees in the [s]upreme [c]ourt in such case are fees rendered solely in resistance of an interlocutory appeal to reverse the decree dissolving the injunction.").

26

¶53.    Since the chancellor denied the County's amended application for a permanent injunction, and since the record contains substantial credible evidence to support her prior issuance of the TRO and the preliminary injunction, the record reflects that Lauderdale was never wrongfully enjoined or restrained.  Therefore, no basis existed to support the award of attorney's fees to Lauderdale.  As a result, the chancellor abused her discretion by erroneously awarding Lauderdale the attorney's fees and expenses he incurred by defending against the County's amended application seeking a permanent injunction.[21]  Accordingly, we reverse the portion of the chancellor's judgment that grants Lauderdale's claim for monetary damages incurred in defending against the County's permanent-injunction action.

## CONCLUSION

¶54.    We affirm in part and reverse and render in part the chancellor's judgment.  We affirm the chancellor's denial of Lauderdale's claim for damages related to the TRO and to the preliminary injunction.[22]  However, because Lauderdale was never wrongfully enjoined, we find that the chancellor abused her discretion by awarding Lauderdale $9,661.39 for attorney's fees and expenses related to the County's unsuccessful action seeking a permanent injunction.[23]  We therefore reverse and render that portion of the chancellor's judgment.

---

[21] *See* Miss. Code Ann. § 11-13-37; M.R.C.P. 65(c).  *See also Giles v. Desporte Ins. Agency*, 253 Miss. 190, 193, 175 So. 2d 616, 617 (1965) (finding the defendant was not entitled to attorney's fees).

[22] *See Parker*, 160 So. 3d at 212 (¶32); Miss. Code Ann. § 11-13-37; M.R.C.P. 65(c).

[23] *See id.*

¶55.   **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**