# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00756-SCT

*A-1 PALLET COMPANY*

*v.*

*CITY OF JACKSON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/04/2009 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDUARDO ALBERTO FLECHAS |
| ATTORNEYS FOR APPELLEE: | LARA E. GILL |
| | PIETER JOHN TEEUWISSEN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     After granting a temporary restraining order preventing the City of Jackson from demolishing certain structures on property owned by A-1 Pallet Company, the Hinds County Chancery Court entered a Memorandum Opinion and Order granting the City's motion to dismiss and dissolving the temporary restraining order. Feeling aggrieved, A-1 Pallet Company appeals to us. Finding no error, we affirm the judgment of the Chancery Court for the First Judicial District of Hinds County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     A-1 Pallet Company is a Mississippi corporation with business operations at 1000 North Mill Street in Jackson, Mississippi. Day-to-day operations of the corporation consist of recycling wooden pallets and converting nonsalvable pallets into mulch.

¶3.     By way of letter, the City of Jackson notified A-1 that a show-cause hearing had been scheduled on Tuesday, June 19, 2007, for the purpose of determining whether the City should proceed to clean up property at the 1000 North Mill Street location, since the property was in "such a state of uncleanliness as to be a menace to the public health and safety of the Community." The first notice,[1] signed by Property Inspector Supervisor Donnie Neely, cited the following actions that needed to be taken on the property in case number 2007-3295: "Cutting of grass & weeds and removing trash and debris, remove heavy vegetation on front of building at gate. Remove deteriorated pallets, scrap metal and inoperable equipment." A second notice cited the following actions to be taken in case number 2007-3294: "Demolish and remove remains of structures or bldgs, cut grass and weeds and remove trash, debris, steps, foundations and driveway, scrap metal, and deteriorated pallets."

¶4.     A-1 retained counsel and sought to have the June 19, 2007, hearing continued. A-1 President Charlotte Reeves attended the June 19 hearing to advise the City her attorney could not be present and to request a continuance; however, Reeves's request for a continuance was denied, and the hearing proceeded without her counsel present. The hearing concluded with

---

[1]Two letters were sent in case number 2007-3295, the first of which erroneously showed the time of the June 19 hearing as 10:00 a.m. rather than 6:00 p.m. A second letter, also dated May 23, 2007 included the correct time. Both letters are collectively referred to as the "first notice."

the City finding that the property was a health and environmental risk and adopting a resolution to destroy certain buildings located on the property. According to Reeves, the buildings on the property the City Council slated for demolition were vital to A-1's day-to-day operations. Moreover, while both notices indicated that A-1 need only clean up the property at its expense to prevent further City action, Reeves claimed that at the hearing, she was no longer given the option to clean the property and that total demolition of the buildings would be imminent.

¶5.     As a result of the City Council's resolution, on June 20, 2007, A-1 filed a Petition for Temporary Restraining Order and Permanent Injunction against the City in the Chancery Court for the First Judicial District of Hinds County. In its Petition, A-1 sought to enjoin the City from demolishing any of its buildings on the property. A temporary restraining order (TRO) against the City was entered that same day. The TRO was extended on June 28, 2007, by agreement of both parties, until such time as the Jackson Historic Preservation Commission could rule on the City's request for a Certificate of Appropriateness, which was required pursuant to a city ordinance in order for the City to destroy property in a historic district.  Also on June 28, 2007, A-1 filed a Bill of Exceptions with the Hinds County Circuit Court to appeal the action of the City Council with respect to its adoption of a resolution to destroy the property.

¶6.     A hearing before the Jackson Historic Preservation Commission was held July 10, 2007. On July 11, 2007, Mayor Frank Melton, acting in his official capacity, announced via local media the City's plans to raze the buildings, in spite of the fact that the Historic Preservation Commission had yet to render a decision. A-1 filed an additional Motion for

Permanent Injunction on July 13, 2007. By agreement of the parties, the TRO was extended a second time. During its September 11, 2007, meeting, the Jackson Historic Preservation Commission denied the City's request to demolish buildings on the property by a vote of 5-0. The City did not appeal this decision.

¶7.     On October 2, 2008, A-1 filed a Motion to Amend Motion for Permanent Injunction to add to its complaint additional plaintiffs, Charlotte Reeves and Carl Monte Reeves (in their individual capacities), to request compensation for damages the plaintiffs had suffered as a result of the City's actions, as well as to add Mayor Melton as a defendant. The City filed its Response to this motion on October 13, 2008, which raised, among several other defenses, that A-1's proposed amendments fell under the subject-matter jurisdiction of the circuit court.

¶8.     A-1 filed an Amended Motion for Permanent Injunction and Damages on November 14, 2008.  The City filed a Motion to Dismiss and Dissolve Temporary Injunction three days later. A hearing was held on April 14, 2009, in the Hinds County Chancery Court, Judge J. Dewayne Thomas presiding, and subsequent memoranda were filed by both parties upon request of the chancery court.

¶9.     On May 4, 2009, Chancellor Thomas entered a Memorandum Order and Opinion in which he found that the chancery court did not have jurisdiction to hear an appeal on a bill of exceptions; rather, only a circuit court had proper subject matter jurisdiction of such an appeal pursuant to Mississippi Code Section 11-51-75. Moreover, the chancellor found that A-1 was required by Mississippi Rule of Civil Procedure 15 to seek leave from the court to file an amended complaint, which A-1 had failed to do.  In its amended complaint, A-1 sought to add tort claims over which the chancery court found it did not have proper subject-

4

matter jurisdiction. Finally, the chancery court found that, since the City of Jackson had not appealed the decision of the Jackson Historic Preservation Commission, the City had "no basis in law or in fact to destroy this property at a future date unless they get a reversal of the Historic Preservation Commission decision." As a result, A-1's claim for permanent injunctive relief was denied. Moreover, the chancery court granted the City's Motion to Dismiss and Dissolve the Temporary Injunction.

## DISCUSSION

¶10. A-1 raises the following four issues for this Court's review:

1. Whether the trial court committed reversible error when it declined to exercise subject-matter jurisdiction over A-1 Pallet Company's Motion for Permanent Injunction, Motion to Amend Motion for Permanent Injunction, and Amended Motion for Permanent Injunction.

2. Whether the trial court committed reversible error when it refused to exercise pendant subject-matter jurisdiction over the tort claims asserted by A-1 Pallet Company against the City of Jackson in its Amended Motion for Permanent Injunction.

3. Whether the trial court committed reversible error when it failed to treat A-1 Pallet Company's Motion to Amend Motion for Permanent Injunction as a motion to amend the pleadings and correspondingly relate A-1 Pallet Company's Amended Motion for Permanent Injunction back to the original filing date of A-1 Pallet Company's Petition for Temporary Restraining Order and Permanent Injunction, or, at a minimum, the original filing date of its Motion for Permanent Injunction.

4. Whether the trial court committed reversible error when it dissolved the Temporary Restraining Order in favor of A-1 Pallet Company with regard to the property in question.

¶11. An appellate court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless . . . the chancellor abused his discretion, was

5

manifestly wrong, clearly erroneous or applied an erroneous legal standard." ***Corp. Mgmt., Inc. v. Greene County,*** 23 So. 3d 454, 459 (Miss. 2009) (quoting ***Biglane v. Under The Hill Corp***., 949 So. 2d 9, 13-14 (Miss. 2007)).

¶12.  In today's case, the issue of whether the chancellor abused his discretion in dissolving the TRO and denying A-1 injunctive relief is dispositive of the case. Accordingly, we decline to address A-1's other assignments of error.

### WHETHER THE CHANCERY COURT ERRED IN DISSOLVING THE TEMPORARY RESTRAINING ORDER AND IN DENYING A-1'S MOTION FOR PERMANENT INJUNCTION.

¶13.  A temporary restraining order may be issued where "immediate and irreparable injury, loss, or damage will result to the applicant" before such time as a hearing on the matter can be held. Miss. R. Civ. P. 65(b)(1).  In today's case, a TRO was issued by the chancery court to A-1, and then extended on two separate occasions by agreement of the parties. Upon motion by the City to dissolve the TRO, the chancery court heard arguments from both parties on April 14, 2009.  The Chancery Court, in its Memorandum Opinion and Order, found there was no longer a need to maintain the TRO. At the time the TRO was issued and extended, no decision had been made by the Jackson Historic Preservation Commission as to the City's request for a Certificate of Appropriateness to demolish structures on the 1000 North Mill Street property, which was located within a historic district. But at the time of the hearing on the City's motion to dissolve the TRO, the Historic Preservation Commission had issued a decision which denied the City's request. The chancery court's findings, in pertinent part, were as follows:

6

[Due to lack of subject-matter jurisdiction], this Court cannot hear any appeal of the City Council's orders, and/or damage suits, and since the City of Jackson never appealed the Jackson Historic Preservation Commission order denying the City of Jackson's right to demolish A-1's property this Court finds there is no need for this Court to continue to maintain its temporary restraining order.

¶14. Thus, the chancellor found that, because the City could not proceed against the property without a Certificate of Appropriateness from the Jackson Historic Preservation Commission, and since the City never had appealed the denial of its request for a certificate, the purposes of the TRO had been served and the issues before the chancery court resolved. Accordingly, the chancery court granted the City's Motion to Dissolve and denied A-1's Motion for Permanent Injunction.

¶15. While A-1 conceded in its brief that the City never had actually damaged any of its structures, nor had the City taken any action since the 2007 ruling by the Jackson Historic Preservation Commission, A-1 maintains that the chancellor erred in dissolving the TRO due to the threat of future harm. Before the chancery court, A-1 argued that, as late as March 2009, Mayor Melton had issued threats through local media vowing to demolish the property. A-1's brief states: "There is simply no need for A-1 to have to spend time and money defending new proceedings by the City of Jackson to demolish the A-1 Property, and there is no reason to believe that the City of Jackson won't initiate such proceedings in the future."

¶16. The City counters that A-1 offered no proof at the hearing on the Motion to Dissolve other than unsupported, conclusory allegations that a threat to the property continued to exist. The City avers that, in making his decision, the chancellor had before him documents chronicling the procedural history of the case and its resolution. The City argued before the

7

chancellor that, because the city council had failed to timely appeal the decision of the Jackson Historic Preservation Commission, the City had no authority to move forward with any previous demolition plans. Currently, the City claims to have no such plans, as evidenced by and through the affidavit of then-Special Assistant City Attorney Pieter Teeuwissen of Jackson, stating there is no action pending regarding the 1000 North Mill Street property.

¶17.   Because there was no longer an immediate threat of injury, as contemplated by Mississippi Rule of Civil Procedure 65(b), there was no longer a need for the TRO or an injunction to remain in effect.  A-1 did not present any proof of immediate, imminent threat of harm to its property, but rather made vague allegations that the City could in the future renew its efforts to destroy structures on the 1000 North Mill Street site.  Accordingly, we find that the chancellor did not err in dissolving the TRO upon motion by the City.

¶18.   As to the chancellor's denial of A-1's Motion for Permanent Injunction and Amended Motion for Permanent Injunction, we likewise decline to find an abuse of discretion. Under traditional rules of equitable relief, a plaintiff bears the burden of showing the need for injunctive relief. *Moore v. Sanders*, 558 So. 2d 1383, 1385 (Miss. 1990) (citing *Sierra Club v. Bergland*, 451 F. Supp. 120 (N.D. Miss. 1978)). Inadequacy of a remedy at law is the basis upon which the power of injunction is exercised. *Id.*  An application for a preliminary injunction is a matter committed to the chancery court's sound discretion. *City of Durant v. Humphreys County Mem'l Hosp./Extended Care Facility,* 587 So. 2d 244, 250 (Miss. 1991).

¶19.   In issuing a preliminary injunction, a chancellor must balance the following factors:

(1) There exists a substantial likelihood that plaintiff will prevail on the merits;

8

(2) The injunction is necessary to prevent irreparable injury;

(3) Threatened injury to the plaintiffs outweighs the harm an injunction might do to the defendants; and

(4) Entry of a preliminary injunction is consistent with the public interest.

*Id.*

¶20. Likewise, for a permanent injunction to issue, the above-mentioned factors are weighed in light of all proffered evidence and following a full hearing on the merits of the claim. 5 Jeffrey Jackson & Mary Miller, *Mississippi Practice Series: Encyclopedia of Mississippi Law* §38:6 (2001). Just as with a preliminary injunction, for a permanent injunction to be granted, "a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law." ***Ruff v. Estate of Ruff***, 989 So. 2d 366, 369-370 (Miss. 2008) (quoting ***Punzo v. Jackson County***, 861 So. 2d 340, 347 (Miss. 2003); ***Reynolds v. Amerada Hess Corp***., 778 So. 2d 759, 765 (Miss. 2000)).

¶21. In ***Moore***, the plaintiff was an elected member of the Leflore County Board of Supervisors who represented District 2. Upon receiving a complaint that Moore was no longer a resident of District 2, the Board of Supervisors conducted a full evidentiary hearing which culminated in a ruling that Moore was no longer eligible for his office by virtue of having changed his residency. *Moore*, 558 So. 2d at 1383-84. The chancery court had denied Moore's application for injunctive relief, which ruling this Court affirmed on the basis that Moore had an adequate remedy at law. *Id.* at 1385. This Court noted that Mississippi Code Section 11-51-75[2] provided a right of appeal to circuit court for any person aggrieved by a

---

[2]An appeal of right of a municipal or county decision is filed with the circuit court by the following means:

decision of municipal authorities or boards of supervisors – an adequate remedy at law, "which Moore in fact pursued." *Id.*

¶22. In today's case, the chancellor denied injunctive relief to A-1 on precisely the same basis. In its Memorandum Opinion and Order, the trial court explicitly stated that, under Section 11-51-75, the circuit court had exclusive jurisdiction to hear appeals of actions or rulings of the Jackson City Council. Thus, A-1 had an adequate remedy at law, and injunctive relief could not be granted. *See Moore*, 558 So. 2d at 1385.

¶23. A-1 argues that the chancellor's ruling was erroneous because, since the City Council had acted without authority of law, its June 19, 2007, decision was an absolute nullity, thus not appealable to circuit court. In support of this argument, A-1 points to language in *Hood v. Perry County*, 821 So. 2d 900 (Miss. Ct. App. 2002) (citing *Biloxi-Pascagoula Real Estate Bd. v. Miss. Reg'l Hous. Auth. No. VIII*, 231 Miss. 89, 98-99, 94 So. 2d 793, 796-97 (1957)), which states: "Proceeding in opposition to a lawful decision of the Board outside of the exclusive remedies available constitutes a collateral attack that will not be maintained." A-1 highlights the words "lawful decision" and argues that, since the City's

---

Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk thereof shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment . . . .

Miss. Code Ann. §11-51-75 (Rev. 2002).

decision was unlawful, it was not appealable to circuit court. However, A-1 fails to cite the following language from ***Hood***: "There is no merit in the Hoods' assertion that the Board's actions do not constitute a judgment or decision that may be appealed to the circuit court. 'We are of the opinion that any act of a county or municipality leaving a party aggrieved is appealable under § 11-51-75' . . . ." ***Id.*** at 902.

¶24.	Moreover, A-1 failed to make this argument before the trial court.  Accordingly, A-1 is procedurally barred from making this argument on appeal. *See **Brown v. Miss. Dept. of Employment Sec.***, 29 So. 3d 766, 771(Miss. 2010) ("This Court repeatedly has held that an issue not raised before the lower court is deemed waived and is procedurally barred.").

¶25.	As there was no abuse of discretion by the chancellor in denying A-1's underlying claim for equitable relief, it follows that the chancery court was unable to exercise pendant jurisdiction over the tort claims. The chancellor found no independent basis for equity jurisdiction; thus, we affirm the chancellor's dismissal of A-1's claims for damages.  *See **Issaquena Warren Counties Land Co., LLC v. Warren County*** 996 So. 2d 747, 751 (Miss. 2008) (recognizing the chancery courts' authority to hear law claims where there exists an independent basis for equity jurisdiction); *see also **Tillotson v. Anders***, 551 So. 2d 212, 213 (Miss. 1989); ***Tideway Oil Programs, Inc. v. Serio***, 431 So. 2d 454, 464 (Miss. 1983); ***Burnett v. Bass***, 152 Miss. 517, 521, 120 So. 456 (1929)).

## CONCLUSION

¶26.	The chancery court did not abuse its discretion in dissolving the temporary restraining order on the basis that there was no longer a threat of immediate harm to A-1's property and interests. Moreover, the trial court did not abuse its discretion in denying injunctive relief to

11

A-1 because A-1 had an adequate remedy at law. Finding no abuse of discretion on the part of the chancery court, this Court is constrained to affirm the judgment of the Chancery Court for the First Judicial District of Hinds County.

¶27. **AFFIRMED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., NOT PARTICIPATING**.