# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00893-COA

DANA WILSON AND KEVIN WILSON                    APPELLANTS

v.

BECKY WILSON                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/2018 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOSEPH BILBO MOFFETT |
| ATTORNEY FOR APPELLEE: | WALTER BROWN JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/12/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.     After a nineteen-year marriage, Kevin Wilson left his wife, Becky, and the couple divorced on December 28, 2015. Kevin bought a house on Main Street in Natchez, Mississippi in February 2016, and his girlfriend, Dana, moved in with him. Because of complex property-settlement issues in early 2016, Becky had strained communications with Kevin during that time, some of which resulted in "occasional outbursts" by Becky that she later acknowledged were "distasteful and unnecessary." There was also animosity between Becky and Dana, with Becky accusing Dana of breaking up her marriage. Kevin and Dana (The Wilsons) married on November 19, 2016.

¶2.     On June 21, 2017, the Wilsons filed a complaint with the Adams County Chancery

Court for a temporary restraining order, preliminary injunction, and permanent injunction against Becky and her sister, Martha Saulters. The complaint alleged:

> That over the past several months Defendants, or one of them, have engaged in a series of events, from social media, to parking in front of and/or driving a vehicle around Plaintiffs' home, to coming onto Plaintiffs' premises and causing a commotion, disturbance and/or physically attacking and assaulting Plaintiffs, which have caused Plaintiffs emotional distress, worry, fear, concern for their personal safety and physical injury.

The complaint resulted from a May 9, 2017 altercation between the parties. Becky was parked in a public "turnaround" on Main Street, approximately 500 feet from the Wilsons' home. Dana was driving down the street, and she angrily confronted Becky. Dana eventually drove away, and Becky, upset by the confrontation, called her sister, Martha, and law enforcement. Later that afternoon, Martha went to the Wilsons' business to talk to Kevin, and she got into a physical altercation with Dana. Becky was not present. Martha was charged with simple assault, and a "No Contact Conditions" order was entered by the Natchez Municipal Court.

¶3. Becky filed a motion to dismiss the complaint on July 6, asserting that the Wilsons failed to state with any specificity the acts alleged or their dates, and she requested a more definite statement.[1] A preliminary motions hearing was held on July 20, 2017. The chancellor held:

> [I]t seems like between now and the time we get back into court at least, that everybody can just agree that they will not have any contact -- any intentional

---

[1] Martha filed an answer, motion to dismiss, and counter-claim requesting a temporary restraining order against the Wilsons. On January 4, 2018, the Wilsons subsequently entered into an agreed order of dismissal with regard to any claims against Martha.

> contact with anyone on the other side of this case. . . . And if they violate that between now and the time they come back to court, that would not necessarily be a good thing. I'm sure the lawyers will advise their clients to not have any contact because that would certainly not look good at the next hearing.

The parties mutually agreed to no contact. On August 16, 2017, the Wilsons filed a notice of service styled "Plaintiffs' Response to Motion for More Definite Statement filed herein by Defendant, Becky Wilson." Attached were copies of various texts and Facebook posts from Becky to Kevin and to Dana's daughter-in-law dated early 2016. The content of those messages indicated that Becky was angry and upset about Kevin's leaving her, and she blamed Dana for ruining her marriage.

¶4. On January 12, 2018, Becky filed a motion for summary judgment. In an attached affidavit, Becky stated that, on May 9, she had received the approved petition for a name change; so she left her home and was headed to Atmos Energy to change her account to her maiden name. Becky attested that she was stopped in the public turnaround on Main Street near the Wilsons' home because she was trying to search for the gas company's phone number because she could not find their office, which she thought was nearby on Franklin Street. While she admitted in the affidavit that she had been "under the care of a health care professional to assist [her] emotionally in [her] re-adjustment and new life," Becky averred that "there was at no time any act on my part towards Kevin or Dana that could be characterized in any way as supportive of the allegations made in the complaint."

¶5. The Wilsons denied the allegations in Becky's motion and filed a motion for a mental examination based on Becky's comment in her affidavit that she had sought help from a health professional. The motion alleged a discrepancy in Becky's affidavit, noting the

court's order granting the name change was filed and signed on May 10, not May 9. The Wilsons also testified in an affidavit regarding specific instances of Becky's conduct (mainly aforementioned texts and Facebook posts) from January 2016 to May 2017, and claiming Becky "ha[d] continuously driven by and/or stopped at our home until May 9, 2017."[2] They also claimed that Becky left a note on their door in February 2017, which stated that she had been interested in buying the house before Kevin bought it.

¶6.     A motions hearing was held on January 30. Becky's counsel argued:

> [T]here is no event or incident that has occurred in the last year and a half, in the six – or more than the last year and a half no incident has occurred. So there is no immediate or irreparable harm to the plaintiffs. . . . [T]he injunction request should be dismissed with a motion of summary judgment entered on behalf of Becky Wilson.

Becky testified that she had been looking for Atmos Energy's office when Dana drove up to her car, "slamm[ing] on brakes" and yelled at her, asking why she was there. Dana then turned around and blocked Becky from moving. Frightened, she called a friend who suggested she contact the police. Kevin happened to drive by at that time, and Dana left. Upset, Becky called her sister and the police, but she decided to let the incident go and went home. The Wilsons did not attend the hearing, but their attorney examined Becky, pointing out inconsistencies in her affidavit regarding the events of May 9. Regarding the prior events alleged by the Wilsons, Becky admitted that she had left a note on the door of the Wilsons' home, but not in 2017 as alleged, but in February 2016, right after Kevin bought the house.

---

[2] Becky filed an amended affidavit on January 29 that contained minor revisions in response to the Wilsons' issue regarding discrepancies in her affidavit. However, since she testified at the motions hearing, counsel subsequently withdrew the amended affidavit as moot.

She acknowledged the previous texts from early 2016, and apologized, explaining she was heartbroken by the dissolution of her marriage. When asked about treatment for mental health, Becky stated that she had contacted and met with a friend who was a counselor to help her with the emotional trauma she suffered because of the divorce.

¶7. On February 21, 2018, the chancery court granted Becky's motion for summary judgment. The court determined that the events from early 2016 were "too remote in time" to the June 2017 complaint for an injunction. The court further held that there was no dispute that Becky was in the public turnaround and, because it was a public street, Becky did not need special permission to be there. Lastly, the chancery court concluded that the events that occurred at the Wilsons' place of business on May 9 were "not proximately caused by Becky."

¶8. Becky filed an application for attorney's fees, and a final judgment of dismissal was entered on May 21, incorporating the court's earlier opinion granting summary judgment and awarding, in part, Becky's application for attorney's fees. The Wilsons appeal. Finding no error, we affirm.

## DISCUSSION

### I. Whether the chancery court erred in granting summary judgment.

¶9. In order for a permanent injunction to be granted, the Wilsons were required to "show an imminent threat of irreparable harm for which there is no adequate remedy at law." *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 569 (¶20) (Miss. 2010) (quoting *Ruff v. Estate of Ruff*, 989 So. 2d 366, 369-70 (¶13) (Miss. 2008)). "A mandatory injunction is a harsh

remedy that is not favored by courts, and should be used only in cases of great necessity." *Ruff*, 989 So. 2d at 370 (¶13). Finding "the record reveal[ed] that Becky had not acted improperly toward the Wilsons for more than a year leading up the filing of the complaint on June 21, 2017," the chancery court granted her motion for summary judgment. We conduct a de novo review of an appeal from summary judgment. *Alamac LLC v. Travelers Bank & Tr. FSB*, 941 So. 2d 219, 220 (¶6) (Miss. Ct. App. 2006). "Pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Id*. (quoting M.R.C.P. 56(c)). Evidence is viewed in the light most favorable to the non-movant. *Id*.

¶10.    The Wilsons argue that the summary-judgment hearing was a "mini-trial," with the chancery court addressing contested issues of fact; therefore, summary judgment was not appropriate. They contend that the court improperly made findings of contested fact, particularly the chancery court's determination that Becky's testimony as to why she was driving down Main Street was "more plausible" that the Wilsons' "attack on her as to why she was passing by [their] home[.]" Their main complaint concerns the inconsistencies between Becky's affidavit and her testimony at the hearing; specifically, that her affidavit said the petition was approved and she left her home to go the Atmos Energy, but her testimony at the hearing was that she left the attorney's office with the copy of the petition that had yet to be approved by court. The Wilsons also take issue with Becky's explanation that she was driving down Main Street to find Atmos Energy, contending that she should

have known that it had moved locations, and they claim that the court ignored their allegation that "Becky ha[d] continuously driven by and/or stopped at [their] home until May 9, 2017."

¶11. We agree with the chancery court that any inconsistencies were not material and created no genuine issue warranting the denial of summary judgment. The petition to change Becky's name was dated and signed by Becky on May 9; it just was not filed and signed by the court until the following day. Moreover, the Wilsons admitted in their pleadings that Becky told Dana she was looking for Atmos Energy when she was confronted. Evidence was presented at the hearing that Atmos Energy's address was still listed on Franklin Street in a recent phone book, corroborating Becky's version of the events that she thought the office was on Franklin Street. Regarding whether Becky had "continuously" driven past their home, Becky said at the hearing that she drove down Main Street often because it was the main thoroughfare in town. The chancery court concluded:

> Becky notes and the [c]ourt takes judicial notice that this is Main Street in the City of Natchez and that given Becky's testimony as to where her residence is and how to normally go to downtown Natchez she customarily uses Main Street, a gateway to the City of Natchez, at least ten times a week, which would be over 500 times a year. Plaintiffs' counsel offered no evidence, probative or otherwise, in contradiction of this testimony. The [c]ourt finds that passing by the Plaintiffs' house at 1210 Main Street is not a genuine issue of material fact that would preclude the granting of [s]ummary [j]udgment.

Thus, the opinion clearly indicated that the chancery court considered the Wilsons' claim in this regard and found it without any basis in the evidence. The Mississippi Supreme Court has held:

> It is precisely because oral testimony, with the attendant opportunity for cross-examination, is the mode of presentation that is thought most appropriate for use at trial that it also is the most trustworthy form of proof available for a

7

Rule 56 hearing. Accordingly, oral testimony should be used when there is reason to believe that it will be of significant assistance to the court and is reasonably circumscribed in scope.

*Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 154 (¶34) (Miss. 2012) (quoting *Crain v. Cleveland Lodge 1532; Order of Moose Inc.*, 560 So. 2d 142, 144 (Miss. 1990)). Counsel for the Wilsons was permitted to cross-examine Becky, and the chancery court properly considered Becky's testimony and explanation of the events and considered this against the allegations in the Wilsons' complaint and affidavit. The Wilsons offered no evidence to contradict Becky's testimony in order to create a genuine issue of material fact that Becky's actions were of a different nature.

¶12. Furthermore, even if we wholly disregard Becky's testimony at the hearing, we still find no evidence to substantiate the Wilsons' claim that they would suffer "irreparable and immediate harm." The Wilsons' original complaint failed to allege any specific events or instances of behavior. The only time frame alleged was "over the past several months." The requested supplementation provided by the Wilsons showed no recent issues, except for a note allegedly left on their door in February 2017 and the incident on May 9. Regarding the note left on the door, we agree with the chancery court's finding that the note was "relatively harmless" and did not create a genuine issue of material fact. The note simply told Kevin Becky had wanted to buy the house and complimented him on his "good taste."

¶13. Therefore, we cannot find error in the chancellor's grant of summary judgment in Becky's favor.

## II. Whether the court erred in granting attorney's fees, costs and expenses.

8

¶14.    Becky filed an application for attorney's fees under Rule 11 and Rule 54(d) of the

Mississippi Rules of Civil Procedure.   Whether to award monetary sanctions under the

Litigation Accountability Act is left to the trial court's discretion.  *In re Spencer*, 985 So. 2d

330, 336-37 (¶19) (Miss. 2008) (citing Miss. Code Ann. § 11-55-7) (Rev. 2002)).  This is

also true for sanctions awarded under Rule 11.  *Id*. at 337 (¶19) (citing M.R.C.P. 11(b)).  In

addressing whether to award monetary sanctions, the chancery court examined each of the

following factors:

(a)     The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed;

(b)     The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid;

(c)     The availability of facts to assist in determining the validity of an action, claim or defense;

(d)     Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose;

(e)     Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict;

(f)     The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy;

(g)     The extent to which any action, claim or defense was asserted by an attorney or party in a good faith attempt to establish a new theory of law in the state, which purpose was made known to the court at the time of filing;

(h)     The amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court;

(i)     The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action;

(j)     The extent of any effort made after the commencement of an action to reduce the number of parties in the action; and

(k)     The period of time available to the attorney for the party asserting any

defense before such defense was interposed.

Miss. Code Ann. § 11-55-7. The chancery court addressed every relevant factor set forth in section 11-55-7 and found: (1) the Wilsons failed to investigate the validity of their claims; (2) the Wilsons failed to make an effort to reduce the number of claims against Becky; (3) all facts were "readily available to the Wilsons"; (4) "the Wilsons prosecuted the actions for an improper purpose"; (5) there were no issues of fact reasonably in conflict; (6) the Wilsons did not prevail with respect to any claim, and they were not granted any relief or offer any settlement; (7) Becky did not owe a duty to the Wilsons to explain why she was on a public street; and (8) although the Wilsons dismissed Martha from the case, they did not make an effort to dismiss Becky.[3] Therefore, finding that Becky had incurred expenses of $715.50 and attorney's fees of $8,287.50 since January 4, 2018, the Wilsons were ordered to pay Becky $9,003, plus interest.

¶15. The Wilsons argue that the court's award of expenses and attorney's fees was not proper as it was apparent their complaint not only had hope of success, but was actually successful because they were awarded temporary relief. They also assert that none of the factors justifying the award were present.

> (a) *The extent to which any effort was made to determine the validity of any action, claim or defense before it was asserted, and the time remaining within which the claim or defense could be filed.*

¶16. The chancery court noted that the "impetus for the filing of this action" was the May

---

[3] The court found that factors (g) and (k) were not applicable. The Wilsons do not dispute this finding on appeal.

10

event. Because Becky was on a public street, and the Wilsons could have easily verified Becky's explanation that she was looking for Atmos Energy's office, the court found the Wilsons "made little or no effort to determine the validity of their claims against Becky." On appeal, the Wilsons simply reiterate their argument from the first issue concerning the inconsistencies in Becky's testimony, and their contention that the court erred in awarding summary judgment because there were genuine issues of material fact. We find no abuse of discretion in the court's finding.

> (b)     *The extent of any effort made after the commencement of an action to reduce the number of claims being asserted or to dismiss claims that have been found not to be valid.*

¶17.    The chancery court found that the Wilsons "did not file any pleading stating what Becky allegedly did that would justify an injunction against Becky." Additionally, the court noted that the Wilsons did not provide any evidence to substantiate their allegations. The Wilsons only assert that such evidence was unnecessary and "simply not proper at a hearing on a [m]otion for [s]ummary [j]udgment." We find no abuse of the discretion in the court's finding that the Wilsons made no effort to reduce or dismiss the claims against Becky.

> (c)     *The availability of facts to assist in determining the validity of an action, claim or defense.*

¶18.    The chancery court found that it was undisputed that Becky was parked on a public street, and the Wilsons could have easily verified that Atmos Energy still had a listed Franklin Street address and confirmed Becky's explanation of her presence. We find no error in the court's determination. Although the Wilsons claim there were disputed facts about the events that day, they do not contest that Becky was indeed on a public street and that the facts

11

regarding why she was there were easily determined.

> *(d)    Whether or not the action was prosecuted or defended, in whole or in part, in bad faith or for improper purpose.*

¶19.    Becky alleged that the action was instituted to harass her, and the chancery court agreed, finding no "substantial justification" for the prosecution of the action.  The Wilsons cite to their response to the motion for summary judgment, which alleged several acts they claim supported their original complaint.  They also contend that because their request for temporary relief was granted, their prosecution of the matter was proper.  As noted, the majority of the acts alleged were found to be too remote in time.  Additionally, the chancery court's reasoning for the granting of temporary relief was because all parties mutually agreed to no contact; not because the chancellor made any findings concerning the substance of the allegations in the complaint.  We find no abuse of discretion in the court's determination.

> *(e)    Whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict.*

¶20.    The Wilsons reiterate their argument from factor (a), which we have already found to be without merit.

> *(f)    The extent to which the party prevailed with respect to the amount of and number of claims or defenses in controversy.*

¶21.    As in factor (d), the Wilsons assert that because their request for temporary relief was granted, the court's finding was contradicted by the record.  Again, we note that the chancery court granted the temporary relief based upon the parties' agreement to no contact, and we can find no abuse of discretion in the court's findings on this factor.

> *(h)    The amount or conditions of any offer of judgment or settlement*

> *in relation to the amount or conditions of the ultimate relief granted by the court.*

¶22. The chancery court found that the Wilsons were not granted any relief and, although there were discussions of a possible settlement, the Wilsons provided no proof "regarding the amount or conditions of any offer of judgment or settlement." The Wilsons note there was no hearing or opportunity to present any proof and refer to a motion to negotiate a settlement. However, the motion only discusses the settlement between the Wilsons and Martha. We find that the record supports the chancery court's determination.

> *(i)     The extent to which a reasonable effort was made to determine prior to the time of filing of an action or claim that all parties sued or joined were proper parties owing a legally defined duty to any party or parties asserting the claim or action.*

¶23. The chancery court concluded that Becky owed no duty to the Wilsons to explain why she was on a public road, and the other actions alleged were "too remote in time to warrant a complaint for injunctive relief." As the Wilsons reiterate their argument from factor (a), we find no abuse of discretion for the reasons already discussed.

> *(j)     The extent of any effort made after the commencement of an action to reduce the number of parties in the action.*

¶24. The chancellor found: "Because of the physical altercation between Martha Salters and Dana, the Wilsons arguably had a legitimate reason to assert a claim against her. Yet, they voluntarily dismissed her from the case. They did not dismiss Becky." The Wilsons assert that the chancellor's finding that they had a legitimate claim against Martha shows they also had a claim against Becky, because if it were not for the May 9 incident between Becky and Dana, Martha would not have come to their business. However, there was no evidence

Becky provoked the altercation between Martha and Dana or that she was even aware Martha was going to see Kevin and Dana at their business.

¶25. The Wilsons further argue that Becky was not dismissed from the suit because she did not accept or reject their proposed settlement. An email to both Becky's attorney and Martha's attorney does indicates that some type of settlement was offered to both defendants. But as we have already determined in the first issue, the Wilsons' complaint failed to allege a claim against Becky that would warrant the permanent injunction. Thus, we find no abuse of discretion in the chancery court's determination that the Wilsons' failure to dismiss Becky from the suit, after they had already dismissed Martha, against whom they had a "legitimate claim," warrants a finding that the factor favored an award of sanctions. Accordingly, we find the chancery court's grant of attorney's fees and expenses was not an abuse of discretion, and we affirm the judgment.

¶26. The Wilsons have also asserted a claim for attorney's fees because Becky's summary-judgment motion was "without reasonable cause." Since we have found no error in the granting of summary judgment, this claim is without merit.

¶27. **AFFIRMED.**

**J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., NOT PARTICIPATING.**