# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00697-SCT

*UNITED HEALTHCARE OF MISSISSIPPI INC.*
*AND UNITED BEHAVIORAL HEALTH INC.*

*v.*

*MISSISSIPPI'S COMMUNITY MENTAL HEALTH*
*COMMISSIONS,*
*REGION ONE MENTAL HEALTH ("REGION 1");*
*NORTH MS COMMISSION ON ML/MR D/B/A*
*COMMUNICARE ("REGION 2"); NORTHEAST*
*MENTAL HEALTH-MENTAL RETARDATION*
*COMMISSION, REGION III D/B/A LIFECORE*
*HEALTH GROUP ("REGION 3"); REGION IV*
*MENTAL HEALTH SERVICES D/B/A*
*TIMBERHILLS ("REGION 4"); REGION 6*
*COMMUNITY MENTAL HEALTH COMMISSION,*
*D/B/A LIFE HELP ("REGION 6"); REGION VII*
*MENTAL HEALTH/INTELLECTUAL*
*DISABILITIES COMMISSION D/B/A*
*COMMUNITY COUNSELING SERVICES*
*("REGION 7"); REGION 8 MENTAL HEALTH*
*SERVICES ("REGION 8"); HINDS BEHAVIORAL*
*HEALTH SERVICES ("REGION 9"); REGION 10*
*STATE OF MS D/B/A WEEMS COMMUNITY*
*MENTAL HEALTH CENTER ("REGION 10");*
*SOUTHWEST MISSISSIPPI MENTAL HEALTH*
*AND RETARDATION COMMISSION-REGION 11*
*D/B/A SOUTHWEST MISSISSIPPI MENTAL*
*HEALTH COMPLEX ("REGION 11"); REGION*
*XII COMMISSION ON MENTAL HEALTH AND*
*RETARDATION D/B/A PINE BELT MENTAL*
*HEALTHCARE RESOURCES ("REGION 12");*
*GULF COAST MENTAL HEALTH CENTER*
*("REGION 13"); SINGING RIVER MENTAL*
*HEALTH/MENTAL RETARDATION SERVICES,*
*REGION XIV ("REGION 14"); AND WARREN*
*YAZOO BEHAVIORAL HEALTH, INC. ("REGION*
*15")*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2020 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| TRIAL COURT ATTORNEYS: | GEORGE H. RITTER |
| | JOHN P. SNEED |
| | CHARLES EDWARD COWAN |
| | TIMOTHY JOHN STERLING |
| | LAUREN RUTH HILLERY |
| | CHARLES G. COPELAND |
| | REBECCA SUZANNE BLUNDEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | TIMOTHY JOHN STERLING |
| | CHARLES G. COPELAND |
| | REBECCA SUZANNE BLUNDEN |
| ATTORNEYS FOR APPELLEES: | GEORGE H. RITTER |
| | CHARLES EDWARD COWAN |
| | JOHN P. SNEED |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 03/24/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2020-IA-00683-SCT

*UNITED HEALTHCARE OF MISSISSIPPI INC.*
*AND UNITED BEHAVIORAL HEALTH INC.*

*v.*

*MISSISSIPPI'S COMMUNITY MENTAL HEALTH COMMISSIONS: REGION ONE MENTAL HEALTH ("REGION 1"), NORTH MS COMMISSION ON MI/MR D/B/A COMMUNICARE ("REGION 2"), NORTHEAST MENTAL HEALTH- MENTAL RETARDATION COMMISSION, REGION III D/B/A LIFECORE HEALTH GROUP ("REGION 3"), REGION IV MENTAL HEALTH SERVICES D/B/A TIMBERHILLS ("REGION 4"), REGION 6 COMMUNITY MENTAL HEALTH COMMISSION D/B/A LIFE HELP ("REGION 6"), REGION VII MENTAL HEALTH/INTELLECTUAL DISABILITIES COMMISSION D/B/A COMMUNITY COUNSELING SERVICES ("REGION 7"), REGION 8 MENTAL HEALTH SERVICES ("REGION 8"), HINDS BEHAVIORAL HEALTH SERVICES ("REGION 9"), REGION 10 STATE OF MS D/B/A WEEMS COMMUNITY MENTAL HEALTH CENTER ("REGION 10"), SOUTHWEST MISSISSIPPI MENTAL HEALTH AND RETARDATION COMMISSION- REGION 11 D/B/A SOUTHWEST MISSISSIPPI MENTAL HEALTH COMPLEX ("REGION 11"), REGION XII COMMISSION ON MENTAL HEALTH AND RETARDATION D/B/A PINE BELT MENTAL HEALTHCARE RESOURCES ("REGION 12"), GULF COAST MENTAL HEALTH CENTER ("REGION 13"), SINGING RIVER MENTAL HEALTH/MENTAL RETARDATION SERVICES, REGION XIV ("REGION 14") AND WARREN YAZOO BEHAVIORAL HEALTH, INC. ("REGION 15")*

DATE OF JUDGMENT:           06/08/2020
TRIAL JUDGE:                 HON. ELEANOR JOHNSON PETERSON
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:   CHARLES G. COPELAND
                                    REBECCA SUZANNE BLUNDEN
                                    TIMOTHY JOHN STERLING

ATTORNEYS FOR APPELLEES:     GEORGE H. RITTER
                                     JOHN P. SNEED
                                     CHARLES EDWARD COWAN
NATURE OF THE CASE:       CIVIL - CONTRACT
DISPOSITION:               AFFIRMED AND REMANDED - 03/24/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     In 2012, United Healthcare of Mississippi (United) entered into provider agreements with Mississippi's fourteen Community Mental Health Centers (CMHCs) to provide Medicaid services under the Division of Medicaid's (DOM's) managed care program established under Mississippi Code Section 43-13-117(H) (Rev. 2021). From 2012 until 2019, United paid the CMHCs an agreed upon amount for Medicaid services—100 percent of the medicaid fee schedule rates. In July 2019, United unilaterally imposed a 5 percent rate cut, retroactive to January 1, 2019, and later demanded that the CMHCs refund 5 percent of all payments made from July 1, 2018, through December 31, 2018, all of which totaled more than $1 million. The CMCHs demanded that United immediately cease and desist from the 5 percent rate cut and recoupments. When United refused, the CMHCs filed a Complaint for Damages and Injunctive Relief in the Circuit Court of the First Judicial District of Hinds County, specifically requesting, *inter alia*, a preliminary injunction.

¶2.     United responded with a motion to compel arbitration and to stay the proceedings. After a two-day evidentiary hearing, the circuit court denied United's motion to compel arbitration, granted the CMHCs' request for injunctive relief, and issued a preliminary

injunction.

¶3. The limited issues presented to this Court are whether the trial court properly enjoined United from imposing a 5 percent rate cut and whether the trial court erred by denying arbitration. For the reasons set forth below, we affirm the trial court's decision to grant a preliminary injunction and to deny the motion to compel arbitration. We remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶4. Mississippi has fourteen regional health commissions established under Mississippi Code Sections 41-19-31 and -33 (Rev. 2018). Each regional commission operates a CMHC to provide facilities and services for the prevention and treatment of mental illnesses, mental disorders, developmental and learning disabilities, alcoholism, narcotic addiction, drug dependence, and related conditions. All CMHCs participate in Mississippi's Medicaid program.

¶5. The state of Mississippi contracts with managed care organizations (MCOs) or coordinated care organizations (CCOs) to provide Medicaid services through its Mississippi Coordinated Acess Network or "MississippiCAN" program. United is one of those MCOs. United is paid to enter into provider agreements with network providers that provide necessary services at agreed rates. In turn, United, rather than the state, reimburses providers for healthcare services rendered to the Mississippi beneficiaries enrolled with United. In its contract with the state of Mississippi, United was instructed to develop and implement innovative payment models that incentivize improvements in healthcare quality, outcomes,

5

or value, as determined by the DOM. *See* Miss. Code Ann. § 43-13-117(H)(l)(c) (Rev. 2021). Subsection (H)(l)(c) places a condition on the negotiated rates: "As a condition for the approval of any program under this subsection (H)(l), the division shall require that no program may . . . (c) [p]ay providers at a rate less than the normal Medicaid reimbursement rate."

¶6. As part of the program, Mississippi pays United a capitation fee, which is a set fee based on the number of members enrolled in United's Medicaid health plan. In exchange for that fee, United assumes the risk that it will incur a loss if the cost of the health services it provides exceeds the capitation fee. Mississippi pays United a capitation fee of approximately $718,870,179 annually to provide services to patients enrolled in its MississippiCAN health plans. In 2018, United's parent company reported revenues of more than $226 billion and net earnings of more than $11.9 billion.

¶7. United and each of the fourteen CMHCs entered into provider agreements to provide behavioral health services to Medicaid patients. Each agreement contained the same basic rate, requiring United to pay the CMHCs the fee maximums published on the DOM's website as the "Medicaid statewide uniform fee schedule." The agreed-upon fees were paid to the CMHCs for the years beginning 2012 until July 2019. United unilaterally imposed an across-the-board 5 percent rate cut on all payments retroactive to January 1, 2019, and then demanded a 5 percent refund on all payments made from July 1, 2018, through December 31, 2018. United unilaterally began a rate cut of 5 percent on its payments. Overpayments claimed by United for the 2018-to-2019 time frame ranged from $17,284 to $161,599. At

6

stake is $1,001,391. If prospective, the 5 percent rate cut would reduce annual funding for the treatment of the mentally ill citizens of Mississippi who are eligible for Medicaid by more than $2 million.

¶8. The CMHCs filed suit, seeking, *inter alia*, temporary and permanent injunctive relief. The CMHCs alleged that United breached its agreements by unilaterally imposing a 5 percent reduction dating back to July 1, 2018. The CMHCs also asserted that United's acts violated statutes, including (1) section 43-13-117(H)(l)(c), which prohibited MCOs and CCOs from paying providers rates less than the normal Medicaid reimbursement rates; (2) Mississippi Code Section 43-13-117(A)(1)(e) (Rev. 2015), which provided that no service benefits or reimbursement under subsection (A)(l) applied to payments under a coordinated care program; and (3) subsection 43-13-117(A)(2)(d) (Rev. 2021), which provided that no service benefits or reimbursement under subsection (A)(2) applied to payments under a coordinated care program. The CMHCs further averred that any claimed arbitration provisions were unenforceable and did not deprive the trial court of jurisdiction because:

a. they violate article 4, section 100, of the Mississippi Constitution;

b. they are procedurally and substantially unconscionable; [and]

c. they were not approved by Plaintiffs' governing boards . . . .

¶9. United responded with a motion to compel. United argued that an arbitration provision in each of the fourteen agreements[1] required arbitration of any dispute stemming from its

---

[1] Four of the fourteen agreements were not in the record. No board minutes were offered into evidence showing that the CMHCs' boards approved any agreements or amendments.

business relationships with the CMHCs. United contended that the dispute arose from the parties' fee disputes under the agreements.

¶10. The trial court entered two separate orders. First, it denied United's motion to compel arbitration, finding that the dispute did not fall within the scope of the arbitration agreements. Next, the trial court granted the preliminary injunction. The trial court found that Mississippi Code Section 43-13-117(B) (Rev. 2015) applied only to the DOM; therefore, no statutory language permitted MCOs and CCOs to apply the 5 percent rate reduction specifically granted to the DOM. The trial court found that the CMHCs "will likely succeed on this element as [United has] likely breached [its] contracts by modifying the payment rate to Medicaid providers and, in doing so, attempted to evade the plain language of its authorizing statute. Miss. Code Ann. § 43-13-117(H)(d)(1) (Rev. 2021). The trial court ordered:

1. that [United] be prohibited from applying the 5 percent Rate Cut to payments for services provided to Mississippi Medicaid beneficiaries;

2. that [United] be prohibited from paying [the CMHCs] less than the Mississippi Medicaid uniform statewide fee schedule for mental health services established by the Division of Medicaid and published at http://www.medicaid.ms.gov/FeeScheduleLists.aspx;

3. that [United] be prohibited from recovering or recouping 5 percent (5 percent) of payments previously made to [the CMHCs] for services rendered to Mississippi Medicaid recipients; and

4. that [United] must comply within sixty (60) days after the entry of this Order.

¶11. United filed a petition for interlocutory review of the order granting a preliminary injunction and filed an appeal of the trial court's order denying its motion to compel arbitration. We granted interlocutory appeal and consolidated both appeals.

8

**ANALYSIS**

**I.**      **Whether the trial court had authority to grant preliminary injunctive relief if an arbitration agreement exists.**

¶12.    The CMHCs averred that the trial court could enter preliminary injunctive relief regardless of its decision on arbitration. We find the Fifth Circuit's holding that trial courts have the authority to grant preliminary injunctive relief even when the parties have entered into an enforceable arbitration agreement persuasive:

> "[T]he congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto*, the meaningfulness of the arbitration process." ***Teradyne v. Mostek Corp.***, 797 F.2d 43, 51 (1st Cir. 1986). Here, the district court merely sought to preserve the status quo *before* deciding the motion to compel arbitration, and by doing so they sought to preserve the meaningfulness of any arbitration that might take place.

***Janvey v. Alguire***, 647 F.3d 585 (5th Cir. 2011) (holding that it was appropriate for a court to enter a preliminary injunction before deciding the motion to compel arbitration). Multiple other federal circuit courts have held that trial courts have plenary authority to issue injunctive relief before deciding the merits of a motion to compel arbitration. *See* ***Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.***, 910 F.2d 1049, 1054 (2d Cir. 1990) (issuing preliminary injunction before any arbitration "preserve[s] the status quo" if the parties are required to arbitrate); ***Perf. Unlimited Inc. v. Questar Publishers, Inc.***, 52 F.3d 1373, 1380 (6th Cir. 1995) ("grant of preliminary injunctive relief pending arbitration is particularly appropriate and furthers the Congressional purpose behind the Federal Arbitration Act"); ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano***, 999 F.2d 211,

214 (7th Cir. 1993) ("'[P]ro-arbitration policies . . . are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration' by granting injunctive relief."). We adopt such sound and logical reasoning. Assuming arguendo the agreements and arbitration provisions were enforceable, the circuit court had the authority to preliminarily enjoin the 5 percent rate cut.

**II.     Whether the trial court erred by granting the CMHCs' motion for preliminary injunction**.

¶13.    On appeal of a preliminary injunction, appellate courts do "not disturb the factual findings of a [trial court] when supported by substantial evidence unless . . . the [court] abused [its] discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Sec'y of State v. Gunn*, 75 So. 3d 1015, 1020 (Miss. 2011) (second alteration in original) (internal quotation mark omitted) (quoting *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 569 (Miss. 2010)). Under Mississippi law, a party may obtain a preliminary injunction by showing: "(1) there exists a substantial likelihood that plaintiff will prevail on the merits; (2) the injunction is necessary to prevent irreparable harm; (3) the threatened harm to the applicant outweighs the harm the injunction might do to the respondents; and (4) entry of the injunction is consistent with the public interest." *Id.* (internal quotation marks omitted) (quoting *Am. Legion Post # 134 v. Miss. Gaming Comm'n*, 798 So. 2d 445, 454 (Miss. 2001)). In today's case, United only contests the substantial likelihood of success on the merits. Thus, we will only address that factor.

¶14.    At the hearing, numerous CMHC witnesses testified as to the agreed reimbursement schedule. The CMHC witnesses testified that the agreements based on fee schedules were

10

the same as the posted Medicaid fee schedule rates. They also testified that the 5 percent rate cut did not comply with the agreed rate, that no CMHC had agreed to the reduced rate, and that no board of commissioners had approved an amendment to the agreements allowing for a 5 percent rate cut. All CMHC representatives testified that their patients would be irreparably harmed and that their ability to fulfill the mission of providing necessary mental health services to the residents of the counties served would be severely hampered as a result of the 5 percent rate cut.

¶15.    In addition to witness testimony, the CMHCs also introduced copies of the Medicaid fee schedule that listed the rates applicable to community mental health center services and the relevant excerpt from the Medicaid State Plan, which incorporated those rates. They introduced a copy of a Mississippi Medicaid Reimbursement Study performed at the request of the Mississippi Medical Care Advisory Committee. The committee opposed such an across-the-board 5 percent reduction on all Medicaid services because of the damaging effect it would cause. Those cuts would eliminate approximately 100,000 patient visits per year, causing irreparable harm to the CMHCs and the patients they serve. The decrease in funding would cause staff layoffs, even further weakening the CMHCs' ability to serve its patients. The 5 percent reduction in payments would severely hamper all CMHCs' ability to fulfill their mission of providing necessary mental health services to the residents of those counties served.

¶16.    United failed to offer any testimony to dispute the CMHCs' averment that the rates United agreed to pay were established at 100 percent of the Medicaid fee schedule rates. This

11

fact is undisputed, as United's counsel explicitly acknowledged that United's fee maximums had always been the equivalent of 100 percent of the Medicaid fee schedule rates:

> And from 2012 to 2018, our fee maximums tracked the Medicaid fee schedule at 100 percent of the fee schedule. There's nothing in the provider agreements that references specifically the Medicaid fee schedule, but that is what had typically been done. And each year the Medicaid fee schedule rates changed, United Healthcare's fee maximum changed as well.

United's one witness, then deputy executive director for the DOM, Tara Clark, testified that Medicaid MCOs were permitted to pay more than the DOM pays for the same service in the fee-for-service program.

> Q. And the Division of Medicaid has not prohibited the MCOs from paying above the Medicaid fee schedule amounts, correct?

> A. Yes. We have not directed them to not reimburse higher, because the --of -- really, that's how they are able to competitively get members in and out of their network, so we understand the flexibility for reimbursement, because we know that in order to get certain providers, you might have to pay marginally more than the normal Medicaid reimbursement rate; however, we have expressly discouraged that across the board, because we don't want inflated rates and managed care compared to what we reimburse in fee for service. But there is nothing that prevents, them, yes, from – from paying more than the Medicaid normal reimbursement rate, but it is definitely not encouraged.

¶17. United offered no proof that any agreements or amendments were submitted to any of the commissions' boards for approval. United offered no evidence of the boards' minutes validating entry of any agreements or amendments. Under Mississippi law, public boards speak only through their minutes, and their actions can only be established by entries on the minutes. ***Wellness, Inc. v. Pearl River Cnty. Hosp.***, 178 So. 3d 1287, 1290 (Miss. 2015). United conceded that it did not seek to amend any of the fourteen agreements. Such

12

amendments would have also required approval of the CMHCs' governing boards. In other words, there could be no amendment to the CMHCs' agreements with United without the CMHCs' boards' approval on the boards' minutes, for which no proof was presented in this record.

¶18. United's unilateral reduction of the agreed rates and/or its attempt to amend the rates without following procedures required by Mississippi law was a clear breach of the agreements. The record before this Court supports the trial court's finding of a substantial likelihood that United breached its agreements with the CMHCs.

¶19. Not only did United breach the agreements, but it also violated Mississippi statutes. Subsection 43-13-117(H)(1)(c) requires Medicaid MCOs and CCOs to pay providers at rates no less than the "normal Medicaid reimbursement rate." Miss. Code Ann. § 43-13-117(H)(1)(c). The trial court found "that the 'normal' payment rate for CCOs is the amount that would be paid without a 5 percent reduction granted to the DOM by the legislature." The trial court further held that "the legislature intended to allow the DOM to reduce direct payments for specified services . . . [but] has not permitted MCOs or CCOs to assume the same reductions as those granted to the DOM at this time." Furthermore, the subsection that granted DOM that authority was repealed effective July 1, 2021. *See* Miss. Code Ann. § 43-13-117(A)(18)(b)(iv) (Rev. 2021) .

¶20. The witnesses testified and the parties agreed that the reimbursement rates for the CMHCs were set forth in the Medicaid fee schedule. Those rates were the "normal Medicaid reimbursement rate" and did not include a 5 percent reduction. Thus, when United cut the

CMHCs' rates by 5 percent, it violated Section 43-13-117(H)(1)(c).

¶21.    Likewise, today's record supports the trial court's finding of a substantial likelihood that United violated Section 43-13-177(H)(1)(c). The trial court's finding was not manifestly wrong, clearly erroneous, or based on an erroneous legal standard. We affirm the preliminary injunction in favor of the CMHCs and remand to the trial court for further proceedings consistent with this opinion.

**III.    Whether the trial court erred by denying the motion to compel arbitration.**

¶22.    "This Court reviews the grant of a motion to compel arbitration de novo." *Jackson Cnty. v. KPMG, LLP*, 278 So. 3d 1124, 1127 (Miss. 2019) (citing *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)). Ten agreements contain arbitration clauses. No board minutes approving the agreements were submitted evidencing the approval of the agreements by the boards. The party that is seeking to enforce a written agreement has the burden to satisfy a court of its validity, meeting all necessary criteria. This record contains no such proof.

¶23.    The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA), "requires courts to place arbitration agreements 'on equal footing with all other contracts.'" *Kindred Nursing Ctrs. Ltd. P'ship. v. Clark*, 137 S. Ct. 1421, 1424, 197 L. Ed. 2d 806 (2017) (quoting *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 465, 193 L. Ed. 2d 365 (2015)). Thus, state law contract defenses remain viable "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas*, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527, 96 L. Ed. 2d 426 (1987).

14

¶24. The CMHCs pled that (1) the arbitration provisions were not approved by the CMHCs' governing boards, (2) the arbitration provisions were beyond the statutory authority of the CMHCs, (3) the arbitration provisions violated article 4, section 100, of the Mississippi Constitution, and (4) the arbitration provisions were unconscionable. Because the issue of board approval is dispositive, we decline to address the remaining arguments.

¶25. In *KPMG, LLP v. Singing River Health System*, 283 So. 3d 662 (Miss. 2019), we recently held that an arbitration provision was unenforceable against a public hospital because the agreement had not been spread upon the minutes of the hospital board. *Id.* at 673-74. We held that the minutes rule under Mississippi law was not preempted by the FAA because it is not "applicable *only* to arbitration provisions." *Id.* at 674 (citing *Taylor*, 826 So. 2d at 713-14). Further, we emphasized that "[i]t is incumbent upon the persons or corporations making contracts with a [public entity] to see that they are legal contracts." *Id.* (internal quotation marks omitted) (quoting *Jackson Equip. & Serv. Co. v. Dunlop*, 172 Miss. 752, 160 So. 734, 737 (1935)). For almost nine decades, we have held that it was incumbent upon parties such as United, as the party seeking to enforce an arbitration agreement, to ensure that its contracts were legal.

¶26. What is missing from today's record is any evidence of any agreements containing an arbitration clause submitted to and approved by a single CMHC board. It was incumbent upon United to ensure all fourteen agreements with the CMHCs were legal and valid. United did not meet its burden. Therefore, we find that the arbitration provisions are unenforceable, and we affirm the trial court's denial of the motion to compel arbitration.

**CONCLUSION**

¶27.    We affirm the trial court's decision to enjoin United from imposing a 5 percent rate cut and to deny the motion to compel arbitration and remand to the trial court for further proceedings consistent with this opinion.

¶28.    **AS TO NO. 2020-CA-00697-SCT: AFFIRMED. AS TO NO. 2020-IA-00683-SCT: AFFIRMED AND REMANDED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.  BEAM, J., NOT PARTICIPATING.**